JOHN B. TURNER, 
SUMMERS HARDY, } JUSTICES.
CHAS M. THACKER,

ROGERS *et al.* v. HERNDON, *County Treasurer.*

No. 4827.   Opinion Filed January 24, 1916.

(154 Pac. 1185.)

1. **TAXATION—Exemption—Use of Property.** Where exemption from taxation is based upon the use to which the lands are put, when the use ceases the exemption also ceases.

2. **SAME—Indian Allotment—Transfer to Third Persons.** After land which has been allotted to a freedman citizen of the Seminole Tribe of Indians and designated as a homestead under the Seminole Agreement bearing date of December 16, 1897 (Act July 1, 1898, c. 542, 30 Stat. L. 567), has been conveyed by the allottee to third parties, it becomes subject to taxation.

(Syllabus by Brown, C.)

*Error from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Action by H. H. Rogers and V. V. Harris against Mace Herndon, Treasurer of Seminole County, to enjoin collection of taxes. Judgment for defendant, and plaintiffs bring error. Affirmed.

*Mann, Rogers & Harris,* for plaintiffs in error.

*C. L. Hill,* Co. Atty., for defendant in error.

Opinion by BROWN, C.  This action was originally commenced in the district court of Seminole county by H. H. Rogers and V. V. Harris, the plaintiffs in error, who will be hereinafter designated plaintiffs, against Mace Herndon, treasurer of Seminole county, defendant in error, who will be hereinafter designated defendant, to restrain the collection of taxes levied against the northwest quarter of the southeast quarter of section 16, township 9 north, range 7 east, in Seminole county, for the years 1909, 1910, 1911, and 1912.

The trial court sustained a demurrer to plaintiffs' petition, and the plaintiffs elected to stand upon the same. The court rendered judgment against the plaintiffs, and they bring error to this court.

The land upon which the tax is sought to be collected was allotted to one Ned Island, a freedman citizen of the Seminole Tribe of Indians, as a part of his portion of the lands of said tribe of Indians, under the laws of Congress and the Seminole Agreement dated December 16, 1897 (30 Stat. L. 567, c. 542), and the said tract of land was designated as a homestead, as provided in said treaty.

On July 30, 1908, the said Ned Island conveyed the land above described to the plaintiffs, and they are now, and have been ever since, the owners of the same in fee. The sole question for determination in this case is

whether or not the Seminole freedman homestead is subject to taxation after the same has been conveyed by the allottee, and the answer to this question depends upon the construction to be placed upon that part of said agreement which applies to the question of taxation; said section being as follows:

"When the tribal government shall cease to exist, the principal chief last elected by said tribe shall execute, under his hand and the seal of the nation, and deliver to each allottee a deed conveying to him all the right, title, and interest of the said nation and the members thereof in and to the lands so allotted to him, and the Secretary of the Interior shall approve such deed, and the same shall thereupon operate as a relinquishment of the right, title, and interest of the United States in and to the lands embraced in said conveyance, and as a guarantee by the United States of the title of said lands to the allottee; and the acceptance of such deed by the allottee shall be a relinquishment of his title and interest in all other lands belonging to the tribe, except such as may have been excepted from allotment and held in common for other purposes. Each allottee shall designate one tract of 40 acres, which shall by the terms of the deed be made inalienable and nontaxable as a homestead in perpetuity."

It is conceded that the tax exemption provided for in the treaty is a property right that cannot be abrogated by either Congress or the State of Oklahoma. *New Jersey v. Wilson*, 7 Cranch, 164, 3 L. Ed. 303; *Choate v. Trapp*, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941; *English v. Richardson*, 224 U. S. 680, 32 Sup. Ct. 571, 56 L. Ed. 949; *Lieber v. Rogers, Co. Treas.*, 37 Okla. 614, 133 Pac. 30; *Whitmire v. Trapp*, 33 Okla. 429, 126 Pac. 578. But the controversy arises as to the period of time such land is to be exempt from taxation. The provision,

"Each allottee shall designatc one tract of 40 acres, which shall, by the terms of the deed, be made inalienable and nontaxable as a 'homestead in perpetuity," is the specific provision of the treaty relied upon by the plaintiffs.

In arriving at the meaning of this provision of the treaty we should take into consideration the whole treaty, and its object and purposes. *United States v. Boisdore,* 8 How. 122, 12 L. Ed. 1009; *Kansas City Bridge Co. v. Lindsay Bridge Co.,* 32 Okla. 31, 121 Pac. 639; *Rider et al. v. Helms et al.,* 48 Okla. 610, 150 Pac. 154, and should bear in mind that a treaty with the Indians must be construed not according to the technical meaning of its words to learned lawyers, but in the sense in which they would naturally be understood by the Indians. *(Jones v. Meehan,* 175 U. S. 1, 20 Supt. Ct. 1, 44 L. Ed. 49).

The legal title to the land in the Seminole Nation was in the tribe, for the common use of its members, and the principal object of the treaty was to extinguish the title of the tribe and to divide the land in severalty among its members, thereby creating a system of private property and laying a foundation for the creation of a state which Congress desired to organize for the government and development of the Indian Territory.

It was also the object and purpose of the parties to the treaty to place certain safeguards and restrictions around the individual members of the tribe to protect them in the use and enjoyment of the said property that was to be allotted to them as their share of the tribal property, and one of the things specially provided for was that each member should have a home consisting of a tract of 40 acres, and, in order to hedge the same around with safeguards and restrictions so as to preserve it to

the allottee, it was provided in that part of the treaty under consideration that it should be "inalienable and nontaxable as a homestead in perpetuity."

It was doubtless not the purpose of the parties to the agreement to enhance the market value of the said 40-acre tract, for the same provision that made it non-taxable also made it inalienable for the same period of time, thus clearly disclosing that it was the sole purpose in making the land non-taxable to preserve it to the allottee as a home, and to protect him in the use and occupancy thereof. And this is further evidenced by the fact that the said treaty makes no special provision for the exemption of the other lands of the allottees from taxation.

There is nothing in this provision of the agreement or in any act of Congress applicable to the Seminole Tribe of Indians that evidences a purpose or intention to exempt the property from taxation in the hands of third persons after they have purchased it from the allottee. On the contrary, the act of Congress of April 26, 1906 (34 Stat. L. 137, c. 1876), expressly provides that the homestead shall be nontaxable so long as the title remains in the allottee, which is equivalent to saying that the same shall be taxable after it passes into the hands of third parties. Thus showing a construction of the treaty by one of the contracting parties, to wit, Congress, to the effect that there was no exemption of the land from taxation in the hands of third parties, and this is a sig-nificant fact in ascertaining the real intention of the parties. *Searight v. Stokes*, 3 How. 151, 11 L. Ed. 548; *Cope v. Cope*, 137 U. S. 682, Sup. Ct. 222, 34 L. Ed. 832; *Marchie Tiger v. Western Inv. Co. et al.*, 221 U. S. 286,

31 Sup. Ct. 5778, 55 L. Ed. 738; *Rider et al. v. Helms et al., supra.*

But we are not forced to rely upon mere circumstances in reaching a conclusion in this case. The language of the provision is not susceptible of any other reasonable construction than that the land should be nontaxable only so long as it remained the property of the allottee, and we believe that this was what the parties undertook to express thereby; the phrase used being "nontaxable as a homestead in perpetuity." To our mind this was a short way of saying that the land must be forever nontaxable so long as it was the homestead of the allottee. It will be observed that it was to be nontaxable "as a homestead." If the parties to the agreement had intended otherwise they certainly would have used more appropriate language; they would not have placed the limiting clause "as a homestead" immediately following the word "nontaxable." Therefore, when the land was sold and it ceased to be the property of the allottee, the pqurpose for which the exemption was given, to wit, to preserve the land to the allottee and protect him in the use and occupancy thereof, had been fully accomplished. In the case of *Commissioners of Miami County v. Brackenridge,* 12 Kan. 114, Brewer, J., in delivering the opinion of the court, laid down the rule:

"Where exemption from taxation is based upon the use to which the lands are put, when the use ceases the exemption also ceases."

Consequently, when the land ceased to be the allottee's homestead by being transferred to a third party, it ceased to be nontaxable. See, also, Bledsoe Indian Law, 2d Ed., sec. 294; *Schock v. Sweet,* 45 Okla. 51, 145 Pac. 388.

The plaintiffs insist that the case of *New Jersey v. Wilson, supra,* is decisive of this question, but we are unable to agree with them in this view. We do, however, fully recognize the soundness of the rule laid down in that case, that a contract to exempt lands from taxation is binding, and cannot be broken, and we have fully adhered to that rule in the foregoing discussion. But in the Wilson Case the contract provided:

"That the lands to be purchased for the Indians aforesaid shall not hereafter be subject to any tax, any law, usage, or custom to the contrary thereof in any wise notwithstanding."

Thus clearly providing that the land should never thereafter be taxable; but in the instant case the land was to be nontaxable as a homestead of the allottee. Or, in other words, in the Wilson Case there was no limit to the time the land should be nontaxable, while in the instant case the land was nontaxable only for a limited period.

Finding no error in the record, we recommend that the judgment of the trial court be affirmed.

By the Court:   It is so ordered.