## SCANLAND *et al.* v. BOARD OF COM'RS OF OTTAWA COUNTY *et al.*

No. 5809.  Opinion Filed February 29, 1916.

(155 Pac. 898.)

1.  **JUDGMENT—Vacation—Power of Court.** Courts of general juris-
diction have inherent power to set aside a judgment and grant
a new trial on account of prejudicial error at the same term of
court at which said judgment is rendered.

2.  **TAXATION—Property Exempt—Allotted Lands—Effect of Alien-
ation.** Allotted lands of the United Peoria and Miami Tribes of
Indians, upon alienation, pursuant to Acts of Congress of June 7,
1897, and May 31, 1900, cease to be exempt from taxation.

(Syllabus by Rummons, C.)

*Error from District Court, Ottawa County;*
*Preston S. Davis, Judge.*

Action by W. B. Scanland and others against the
Board of County Commissioners of the County of Ottawa
and others.  Judgment for defendants, and plaintiffs bring
error.  Affirmed.

*S. C. Fullerton* and *A. Scott Thompson,* for plaintiffs
in error.

*Ray McNaughton,* Co. Atty. *(F. D. Adams,* of coun-
sel), for defendants in error.

Opinion by RUMMONS, C.  This action arises out of
an attempt by the authorities of Ottawa county to levy
taxes upon certain lands of the plaintiffs in error, here-
inafter styled the plaintiffs, which they had acquired by
purchase from allottees and the heirs of allottees of the
United Peoria and Miami Tribes of Indians.  In the court
below the defendants in error, hereinafter styled the de-
fendants, demurred to the petition of plaintiffs, which

demurrer was overruled. The defendants declined to plead further, and the court granted a permanent injunction restraining the collection of the taxes complained of. Defendants filed a motion for a new trial, which motion was overruled, to which ruling they excepted. Thereafter, at the same term of court, defendants moved the court to vacate the judgment theretofore rendered in this cause, which motion was sustained by the court, and the decreé granting a permanent injunction was "set aside for mistake of law of the court," and the defendants were given five days to answer, and the plaintiffs five days thereafter to plead, and a temporary restraining order granted to the plaintiffs. Thereafter defendants answered, plaintiffs replied to the answer, and the cause was tried to the court upon the following statement of facts:

"It is hereby agreed by the parties to this suit that all of the facts are as follows:

"(1)   That the allegation of facts set forth in petition of plaintiff are true; it not being agreed that conclusions of law therein set forth are correct.

"(2)   That the plaintiffs have paid the taxes levied against their lands as set forth in Schedule A, attached to the answer of the defendants filed herein, but that the said plaintiffs nor either of them ever knowingly or intentionally waived any of the rights, privileges, benefits, or exemptions appurtenant to the lands owned by them respectively.

"(3)   That the plaintiffs, all of them, except the following named persons, to wit:   Charley Stoner, S. C. Fullerton, D. H. Wilson, William Story, R. F. Wessell, J. W. Powers, W. L. McWilliams, Mrs. E. Gramley, Henry Vogler, T. J. Cardin, L. L. McManaman, D. H. Wilson, E. A. Trigg, as to the W. ½ of S. E. ¼ and N. E. ¼ of S. E. ¼ and S. W. ¼ of N. E. ¼, Sec. 21, and N. ½ of S. W. ¼, Sec. 22, all in Twp. 28 N., range 23, listed the lands

owned by them respectively for taxation for the year 1911, but that those plaintiffs whose names are above set forth did not list their lands for taxation for said year of 1911, except as above set forth.

"(4) That the present owners, being the plaintiffs above, and all former owners since the title to the lands described in plaintiffs' petition has been passed from the original allottee, have neglected to assert, prior to the year 1912, their claim to an exemption from taxation; that the said plaintiffs were not advised of their right to claim an exemption from taxation on the lands described in plaintiff's petition prior to 1912.

"That the above and foregoing constitutes all of the facts in the above-entitled action."

The court rendered judgment for defendants, and plaintiffs appeal.

The first contention of plaintiffs is that the court erred in sustaining the motion of defendants to vacate the judgment theretofore rendered in this cause, for the reason that there were no grounds assigned in the motion to vacate the judgment upon which to base such action. We do not think there is any merit in this contention. It has been settled by this court that the inherent power rests in courts of general jurisdiction upon their own motion to set aside a judgment and grant a new trial on account of prejudicial error at the same term of court at which such judgment is rendered. *Todd v. Orr*, 44 Okla. 459, 145 Pac. 393.

The principal contention of plaintiffs is that the lands in controversy were exempt from taxation until the year 1915. The plaintiffs in this action sought to enjoin the collection of taxes levied for the year 1912 upon said lands, and the further levy and assessment of taxes thereon until

the year 1915 by virtue of the provisions of the act of Congress approved March 2, 1889 (25 Stats. 1013, c. 422), allotting these lands to the members of the United Peoria and Miami Tribes of Indians. After the passage of such act of Congress, by virtue of which each member of said tribes received an allotment of 200 acres, the adult allottees, who had each received allotments of 200 acres or more, were authorized to sell 100 acres thereof under such rules and regulations as the Secretary of the Interior might prescribe. Act Cong. June 7, 1897, c. 3, 30 Stats. 62. By Act Cong. May 31, 1900, c. 598, 31 Stats. 221, the heirs of allottees of the members of said tribes who were authorized by the act of 1897 to sell a portion of their lands were empowered, subject to the approval of the Secretary of the Interior, to sell their inherited lands. The plaintiffs claim title to the lands involved herein by virtue of the provisions of the acts of Congress of 1897 and 1900, above cited, having purchased them from the allottees or from the heirs of deceased allottees with the approval of the Secretary of the Interior, upon application of such allottees and heirs, pursuant to the authority granted by said acts.

The act of March 2, 1889, provided:

"The land so allotted shall not be subject to alienation for twenty-five years from the date of the issuance of patent therefor, and said lands so allotted and patented shall be exempt from levy, sale, taxation, or forfeiture for a like period of years." (25 Stat. 1014.)

Under this provision the plaintiffs claim that their lands are exempt from taxation until the expiration of the 25-year period.

The defendants contended that, inasmuch as the plaintiffs had for a period of four years prior to the commence-

ment of this action listed their lands for taxation, and paid the taxes thereon, they had thereby renounced and waived this exemption. But we need not examine this contention of defendants, in the view we take of the vital question to be considered, whether or not these lands of plaintiffs were exempt from taxation in their hands, further than to note that the purchasers of these lands must not, at the time of purchase, have had the privilege of exemption from taxation in mind. The acts of Congress providing for the allotment of tribal lands to the members of the various Indian tribes which provided an exemption from taxation of such allotted lands are couched in varied language, the provisions for exemption from taxation apparently not being identical in any two of the various acts. The restrictions upon alienation in such allotment acts are equally varied in language, and so are the acts authorizing alienation. So that the lands of each of the several tribes of Indians stand upon a different footing as to exemptions, restrictions, and alienability from any of the others. But one general purpose runs through them all; that is, the protection of the Indians in the usufruct of these lands against their own improvidence and the greed of their white neighbors, as well as against the exactions of government.

The lands involved herein are not affected by the various acts of Congress relating to the Five Civilized Tribes; so that in determining the claim to exemption from taxation made by the plaintiffs we can only consider the provisions of the several acts relating to the lands of the United Peoria and Miami Tribes. Plaintiffs contend upon the authority of *Choate v. Trapp*, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941, and *New Jersey v. Wilson*, 7 Cranch, 164, 3 L. Ed. 303, and *Bowling v. United States*,

233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080, that the exemption claimed by them ran with the land and passed to them from their Indian vendors.

These lands had been exempted from the operation of the General Allotment Act relating to Indian Lands throughout the United States by Act Cong. Feb. 8, 1887, c. 119, 24 Stats. 388. When two years later Congress determined to extend its plan of allotment in severalty, by which the Indians of the various tribes whose lands were allotted became citizens of the United States, to the United Peoria and Miami Tribes, it was no doubt a part of the general purpose of extinguishing the tribal relations of the Indians and making them self-supporting citizens of the commonwealth. It was thought necessary to provide a transition period, during which the tribal Indians, in becoming independent, self-supporting citizens of the country, should be protected in the lands allotted to them from voluntary and involuntary alienation. For this reason alienation for a period of 25 years was forbidden, and coupled with such veto upon alienation was the exemption from levy, sale, taxation, or forfeiture. Was it the intent of Congress to make this exemption run for the full period of 25 years, regardless of whether the restrictions upon alienation might be sooner removed?

We think that the case at bar can be distinguished from *Choate v. Trapp, supra,* in two particulars: First, that in the latter case those claiming the exemption were Indians, for whose benefit the exemption was provided; and, second, that in the latter case the allotment act authorized alienation of a part of the lands of allottees in a shorter period than that provided for the tax exemption. So that, we think, in the instant case the restriction of alienation and the exemption from taxation are so coupled

together that it must have been the intent of Congress at the time of the adoption of the allotment act of 1889 to provide for the exemption from levy, sale, taxation or forfeiture only during the period that the allotted lands were owned by the Indians. We think the case of *Bowling v. United States, supra,* is authority for this conclusion. The fourth paragraph of the syllabus in that case says:

"The land, whether in the hands of the Indian allottee or his heirs, must be deemed to be bound by the restriction in the act of March 2, 1889, that 'the land so allotted shall not be subject to alienation for twenty-five years from the date of the issuance of patent,' in view of the further provisions of that act 'that said lands so allotted and patented shall be exempt from levy, sale, taxation, or forfeiture for a like period of years,' that the patent shall expressly set forth that 'the land therein described and conveyed' shall not be alienated during this period, and that contracts 'to sell or convey such land' entered into before the expiration of said term of years shall be absolutely void."

Mr. Justice Hughes, who delivered the opinion, seems to have considered that the restriction upon alienation and the exemption were coupled together, and went hand in hand. It will be noted that the restriction upon alienation is fixed at 25 years from the issuance of patent, and that the exemption is limited to a like period of years, thus indicating the intention of Congress that the exemption should apply only so long as the lands were held by the Indians, and that the period of exemption should correspond with the period of restriction upon the alienation. Further, the exemption protects the lands against levy, sale, and forfeiture, as well as against taxation. If the contention of plaintiffs be correct that the exemption runs with the lands in the hands of non-Indian grantees, the

whole exemption must be applicable to these lands, and such lands would be free from sale upon execution or order of sale under foreclosure of mortgage, nor could they be escheated to the state in the event they became liable thereto. To place the construction upon this act of Congress desired by plaintiffs would lead to absurd and unjust consequences, and such a construction is never to be given a statute, if any other can be given. 2 Lewis' Sutherland, Statutory Construction (2d Ed.) sec. 516.

Following *Shock v. Sweet,* 45 Okla. 51, 145 Pac. 388, it has been held by this court in the case of *Rogers v. Herndon,* 55 Okla. 1, 154 Pac. 1185, that when the use for which an exemption is made has ceased to exist the exemption also must fall. So that, when Congress by the acts of 1897 and 1900 determined it would be for the best interests of the Indians involved to permit a sale by them of a portion of their allotted lands and of their inherited lands, the purpose for which the exemption attached to the lands while in the hands of the Indians ceased to exist, and upon alienation the lands ceased to be exempt. It cannot be conceived that Congress had any purpose to provide an exemption from taxation, levy, sale, and forfeiture for the benefit of such individuals as might purchase these lands; for at the time the exemption was granted it was contemplated that there would be no sale of the lands during the period for which it was granted. The later acts of 1897 and 1900 evinced a change of policy as to these lands, and only by reason of these acts could these plaintiffs have become the owners thereof, and, as these acts granted no exemption to the purchasers of such lands, the purchasers cannot go behind them and claim the benefit of the act of 1889. *Armstrong v. Athens County,* 16 Pet. 281, 10 L. Ed.

965; *Goudy v. Meath,* 203 U. S. 146, 27 Sup. Ct. 48, 51 L. Ed. 130.

We do not think that the facts in this case bring it within the rule laid down in *New Jersey v. Wilson, supra,* upon which plaintiffs rely. In that case the fee of the lands never was in the Indians, for whom it was purchased, but was in commissioners appointed by the colony and State of New Jersey to administer for the benefit of the Indians. The situation of the Delaware Indians, referred to in that case, with respect to the land, was the same as that of the Indians residing upon the various reservations granted them by the United States. Their right to the lands was possessory only. The fee rested in the trustees, and might have been said to have rested in the State of New Jersey. The conveyances made of this land were made by the trustees under authority of the state. Here the fee had been vested in the Indians with an exemption from levy, sale, taxation, and forfeiture for the period during which the Indians were restricted from alienation; so we do not think that the case of *New Jersey v. Wilson, supra,* is authority for holding these lands exempt in the hands of plaintiffs.

We therefore conclude that the judgment of the trial court was right, and should be affirmed.

By the Court: It is so ordered.