# BOWLING AND MIAMI INVESTMENT COMPANY
## v. UNITED STATES.

### APPEAL  FROM  THE  CIRCUIT  COURT  OF  APPEALS  FOR  THE EIGHTH  CIRCUIT.

No. 177.   Submitted April 17, 1914.—Decided May 4, 1914.

The guardianship of the United States over allottee Indians does not cease upon the making of the allotment and the allottee becoming a citizen of the United States. *Tiger* v. *Western Investment Co.*, 221 U. S. 286.

The United States has capacity to sue for the purpose of setting aside conveyances of lands allotted to Indians under its care where restrictions upon alienation have been transgressed. *Heckman* v. *United States*, 224 U. S. 413.

A transfer of allotted lands contrary to the inhibition of Congress is a violation of governmental rights of the United States arising from its obligation to a dependent people, and no stipulations, contracts or judgments in suits to which the United States is a stranger can affect its interest.

The authority of the United States to enforce a restraint lawfully created by it cannot be impaired by any action without its consent.

Restrictions on alienation imposed by acts of Congress imposed by the act of March 2, 1889, regarding the allotments to the confederated tribes specified therein, are not mere personal restrictions operative upon the allottee alone, but run with the land and are binding upon his heirs as well for the specified term.

The intent of Congress in regard to its enactments—such as those relating to restrictions on alienation of Indian allotted lands—may be indicated by subsequent enactments relating to the same subject-matter.

191 Fed. Rep. 19, affirmed.

THE facts, which involve the construction of statutes affecting the alienation of Indian allotments, are stated in the opinion.

*Mr. James H. Harkless, Mr. Halbert H. McCluer* and *Mr. Roland Hughes* for appellants:

As to location of land and history of allotment, see
Acts of Congress Oct. 14, 1868, Revised; Indian Treaties,
839–848; Allotment Act, 25 Stat. 1013; Dawes' Allotment
Act, 24 Stat., § 8, pp. 388, 391; *Jones* v. *Meecham,* 175
U. S. 13.

As to citizenship of allottee, see act of March 3, 1901,
24 Stat. 390; act of June 16, 1907, admitting Oklahoma to
Statehood, 34 Stat. 268; *Boyd* v. *Nebraska,* 143 U. S. 135;
Cooley's Const. Law, 270; *In re Heff,* 197 U. S. 488; 26
Stat. 99.

As to effect of restrictions on sale, see act of Congress
under which patent was issued, § 1.    9 Am. & Eng. Ency.
(2d ed.), p. 127, Title "Deeds," Note 4; 13 *Id.,* p. 794;
*Anderson* v. *Corry,* 38 Am. Rep. 608; *Armstrong* v. *Athens
Co.,* 70 Oh. St. 235; *Armstrong* v. *Athens Co.,* 16 Pet. 289;
*Bauldin* v. *McDonnell,* 29 Michigan, 84; *Clark* v. *Lord,* 20
Kansas, 390–396; *Miami Co.* v. *Brackenridge,* 12 Kansas,
114; *Farrington* v. *Wilson,* 29 Wisconsin, 383; *Frederick* v.
*Gray,* 12 Kansas, 518; *Handcock* v. *Mutual Trust Co.,* 103
Pac. Rep. 566; *Krause* v. *Means,* 12 Kansas, 267; *Libby* v.
*Clark,* 118 U. S. 250; *Lowry* v. *Weaver,* 4 McClain, 82
(Fed. Cases, 8584); *McMahon* v. *Welch,* 11 Kansas, 280;
*Oliver* v. *Forbes,* 17 Kansas, 130; 4 Ops. Atty. Gen. 529;
Ottawa Treaty, 1862, Art. 7, 12 Stat. 1240; *Oxley* v. *Lane,*
38 N. Y. 325, 330, 351; *Pickering* v. *Lomax,* 145 U. S. 316;
Treaty of Jan. 31, 1855; 7 Stat. 185, 191, 220, 297; 10
Stat. 1092, 1159, 1161; 11 Stat. 431, 583; 24 Stat. 389;
25 Stat. 1013; 26 Stat. 99, 989; 28 Stat. 334; 32 Stat.
641.

As to right of Government to maintain this suit as
guardian, see *Civil Rights Cases,* 109 U. S. 25; *Ex parte
Savage,* 158 Fed. Rep. 205; *In re Heff,* 197 U. S. 488; *In re
Celestine,* 114 Fed. Rep. 551; *United States* v. *Boss,* 160
Fed. Rep. 132; *United States* v. *Dooley,* 151 Fed. Rep. 697;
*United States* v. *Auger,* 153 Fed. Rep. 671; *United States* v.
*San Jacinto Tin Co.,* 125 U. S. 273.

Suit cannot be maintained as trustee. *In re Iowa &c. Commission Co.*, 6 Fed. Rep. 801; *Libby* v. *Clark*, 118 U. S. 250; *McKay* v. *Kalyton*, 204 U. S. 458; Report Commission on Indian Affairs, 1907, p. 69; Rev. Stat., § 2296; *United States* v. *Kapp*, 110 Fed. Rep. 164.

As to organization and jurisdiction of courts in Indian Territory, see act of May 2, 1890, 25 Stat. 784; *Davenport* v. *Buffington,* 97 Fed. Rep. 237; 25 Stat. 783; *Thompson* v. *Rainwater*, 49 Fed. Rep. 406.

*Buffalo* v. *Goodrum*, 162 Fed. Rep. 817, is not applicable.

As to estoppel, see *Carr* v. *United States*, 98 U. S. 438; *Chope* v. *Detroit Plank Road Co.*, 37 Michigan, 195; *Cohn* v. *Burnes*, 5 Fed. Rep. 326; *Commonwealth* v. *Andre*, 3 Pick. 224; *Commonwealth* v. *Pejepscup Proprietors*, 10 Massachusetts, 155; *Vermont* v. *Society*, Federal Cases, No. 16920; *Gibbons* v. *United States*, 5 Cir. Court, 416; *Pengra* v. *Mung*, 29 Fed. Rep. 830, 836; *State* v. *Bailey,* 19 Indiana, 452; *Indiana* v. *Milk*, 11 Fed. Rep. 389; *State* v. *School Dist.*, 88 N. W. Rep. 751; *The Siren*, 7 Wall. 155; *United States* v. *Stimpson*, 125 Fed. Rep. 907, 910; *United States* v. *Wagon Road Co.*, 54 Fed. Rep. 811.

*Mr. Assistant Attorney General Knaebel* and *Mr. S. W. Williams* for the United States:

Without the consent of the Secretary of the Interior the heirs were powerless to sell the allotment.

The act of March 2, 1889, plainly declares, not that the allottee may not alienate, but that the land itself shall not be subject to alienation for a period of 25 years from the date of patent. In the absence of any clear and controlling reason to the contrary, the act should be applied according to this obvious meaning of its language.

Neither in the antecedents of the act nor in any consideration of necessity or convenience respecting its policy, can an excuse be discovered for departing from its letter. On the contrary, to imply an exception in favor of the

alienation of inherited lands would be productive of hardship and injustice and tend to defeat the protective purposes of the act and the objects of the reservation.

The acts of May 31, 1900, and May 27, 1902, which provide, the former with reference to this reservation specifically and the latter generally, that restricted allotments when inherited may be sold by the heirs subject to the approval of the Secretary of the Interior, remove all doubt, if any there can be, concerning the intention of the act of March 2, 1889.

The decree of the United States court for the Indian Territory is null and void.

The United States is entitled to maintain this suit in its own name.

In support of these contentions, see *Aaron* v. *United States*, 204 Fed. Rep. 943; *Bowling* v. *United States*, 191 Fed. Rep. 19; *Choctaw-Chickasaw Cases*, 199 Fed. Rep. 813; *Clark* v. *Lord*, 20 Kansas, 390; *Miami County* v. *Brackenridge*, 12 Kansas, 114; *Farrington* v. *Wilson*, 29 Wisconsin, 383; *Frederick* v. *Gray*, 12 Kansas, 518; *Goodrum* v. *Buffalo*, 162 Fed. Rep. 817; *Heckman* v. *United States*, 224 U. S. 413; *The Kansas Indians*, 5 Wall. 737; *McMahon* v. *Welch*, 11 Kansas, 280; *Mullen* v. *United States*, 224 U. S. 448; *Tiger* v. *West. Investment Co.*, 221 U. S. 286; *United States* v. *Aaron*, 183 Fed. Rep. 347; *United States* v. *Freeman*, 3 How. 556; and the following acts and treaties: act of March 3, 1859, 11 Stat. 425; act of March 3, 1873, 17 Stat. 631; act of June 23, 1873, 17 Stat. 417; act of February 8, 1887, 24 Stat. 388; act of March 2, 1889, 25 Stat. 1013; act of May 2, 1890, 26 Stat. 81; act of June 7, 1897, 30 Stat. 62; act of May 31, 1900, 31 Stat. 221; act of May 27, 1902, 32 Stat. 245; act of June 28, 1906, 34 Stat. 539; Treaty of October 27, 1832, 7 Stat. 403; Treaty of October 29, 1832, 7 Stat. 410; Treaty of May 30, 1854, 10 Stat. 1082; Treaty of June 5, 1854, 10 Stat. 1093; Treaty of February 23, 1867, 15 Stat. 513.

MR. JUSTICE HUGHES delivered the opinion of the court.

Pursuant to the act of March 2, 1889, c. 422, 25 Stat. 1013, a tract of land in the Indian Territory was allotted to Pe-te-lon-o-zah, or William Wea, a member of the confederated Wea, Peoria, Kaskaskia and Piankeshaw tribes of Indians. The patent, conveying the land to Wea and his heirs, was issued on April 8, 1890, and imposed a restraint upon alienation for a period of twenty-five years from its date. Upon the death of Wea, his heirs entered into a contract to sell the land and in a suit brought by them in the United States court for the Northern District of the Indian Territory, for the purpose of enforcing the contract, judgment was entered sustaining its validity. The property was thereupon conveyed by the heirs and passed by various mesne conveyances to the appellants.

The United States, by virtue of its interest in the enforcement of the restriction against alienation, instituted this suit to cancel these conveyances and also to set aside the above-mentioned judgment. The case was heard upon bill and answer, and a decree was rendered in favor of the United States which was affirmed by the Circuit Court of Appeals. 191 Fed. Rep. 19.

The relations of the Government to these Indians, and the legislation with respect to the lands occupied by them, may be briefly stated. In 1832, the Piankeshaw and Wea tribes of Indians ceded to the United States their interest in lands within the States of Missouri and Illinois, and lands were set apart for them in what is now the State of Kansas (7 Stat. 410), adjoining the lands assigned to the Peorias and Kaskaskias (7 Stat. 403). In 1854, the Piankeshaws and Weas were united into a single tribe with the Peorias and Kaskaskias, and the consolidated tribes ceded to the United States all their interest in the tracts theretofore assigned to them, reserving, in addition to

certain sections which were to be held as common property, a specified quantity of land for each individual, the patents for which were to be issued "subject to such restrictions respecting leases and alienation, as the President or Congress" might prescribe. (10 Stat. 1082; see *The Kansas Indians*, 5 Wall. 737, 757, 758.) By the treaty of February 23, 1867 (15 Stat. 513, 518, 519), provision was made for the sale of the common tract in Kansas and for the purchase with the proceeds of lands in the north-east portion of what is at present the State of Oklahoma; and to enable the Indians to dispose of their allotments in Kansas, the Secretary of the Interior was authorized to remove the restrictions upon sale. In 1873 (c. 332, 17 Stat. 631), members of the tribe of Miamis, so electing, were united with these confederated tribes under the name of the United Peorias and Miamis. The territory which they occupied was expressly excepted from the operation of the general allotment act of February 8, 1887, c. 119, § 8, 24 Stat. 388, 391; but the provisions of that statute, with certain exceptions, were extended to these Indians by the act of March 2, 1889, c. 422, 25 Stat. 1013.

By the latter act, the Secretary of the Interior was authorized to make an allotment of land to each member subject to the following restriction:

"The land so allotted shall not be subject to alienation for twenty-five years from the date of the issuance of patent therefor; and said lands so allotted and patented shall be exempt from levy, sale, taxation, or forfeiture for a like period of years. As soon as all the allotments or selections shall have been made as herein provided, the Secretary of the Interior shall cause a patent to issue to each and every person so entitled, for his or her allotment, and such patent shall recite in the body thereof that the land therein described and conveyed shall not be alienated for twenty-five years from the date of said patent, and

shall also recite that such land so allotted and patented is not subject to levy, sale, taxation, or forfeiture for a like period of years, and that any contract or agreement to sell or convey such land or allotments so patented entered into before the expiration of said term of years shall be absolutely null and void" (§ 1, p. 1014).

It was under this provision that the land here in question was patented to William Wea, the allottee.

The confederated Peoria Indians who received allotments were made citizens of the United States by the act of May 2, 1890, c. 182, § 43, 26 Stat. 81, 99; and in 1897, it was provided that adult allottees, who had received allotments of two hundred acres or more, might sell one hundred acres under such regulations as the Secretary of the Interior might prescribe. Act of June 7, 1897, c. 3, 30 Stat. 62, 72. Subsequent provisions permitted sales by heirs of allottees, but only upon the approval of the Secretary of the Interior. Acts of May 31, 1900, c. 598, § 7, 31 Stat. 221, 248; May 27, 1902, c. 888, § 7, 32 Stat. 245, 275.

It is contended by the appellants that when the allotment was made, and the allottee became a citizen of the United States, the guardianship of the Government ceased. But this contention is plainly untenable. *Tiger* v. *Western Investment Company,* 221 U. S. 286. And it is no longer open to question that the United States has capacity to sue for the purpose of setting aside conveyances of lands allotted to Indians under its care, where restrictions upon alienation have been transgressed. Since the decision below, the precise question has been determined by this court in *Heckman* v. *United States,* 224 U. S. 413, and it was there held that the authority to enforce restrictions of this character is the necessary complement of the power to impose them. It necessarily follows that, as a transfer of the allotted lands contrary to the inhibition of Congress would be a violation of the governmental rights of the

United States arising from its obligation to a dependent people, no stipulations, contracts, or judgments rendered in suits to which the Government is a stranger, can affect its interest. The authority of the United States to enforce the restraint lawfully created cannot be impaired by any action without its consent. *Heckman* v. *United States, supra,* p. 445. If, therefore, the conveyance by the allottee's heirs, in the present case, would otherwise have been subject to cancelation, it was not saved by reason of the judgment entered in their suit against the purchaser.

The question then is, whether the restriction imposed by the act of 1889 was a merely personal one, operative only upon the allottee, or ran with the land binding his heirs as well. This must be answered by ascertaining the intent of Congress as expressed in the statute. The restriction was not limited to "the lifetime of the allottee," as in *Mullen* v. *United States,* 224 U. S. 448, 453, nor was the prohibition directed against conveyances made by the allottee personally. Congress explicitly provided that "the land so allotted" should not be subject to alienation for twenty-five years from the date of patent. "Said lands so allotted and patented" were to be exempt "from levy, sale, taxation, or forfeiture for a like period of years." The patent was expressly to set forth that "the land therein described and conveyed" should not be alienated during this period, and all contracts "to sell or convey such land" which should be entered into "before the expiration of said term of years" were to be absolutely void. These reiterated statements of the restriction clearly define its scope and effect. It bound the land for the time stated, whether in the hands of the allottee or of his heirs. Moreover, the subsequent legislation, relating to the same subject-matter, which expressly provided for conveyances by heirs of allottees subject to the approval of the Secretary of the Interior, leaves no room

for doubt as to the intention of Congress. *United States* v. *Freeman,* 3 How. 556, 564 *Cope* v. *Cope,* 137 U. S. 682, 688; *Tiger* v. *Western Investment Company,* 221 U. S. p. 309.

The conveyance by Wea's heirs came directly within the statutory prohibition, and the later conveyances under which the appellants claim must fall with it.

*Affirmed.*