## ROE et al. v. BURT.

No. 7718—Opinion Filed July 24, 1917.

Rehearing Denied Nov. 6, 1917.

(168 Pac. 405.)

1. **Indians— Allotment of Lands — Alienation—Act of Congress.**

By virtue of an act of Congress, approved June 28, 1906, 34 Stat. 539, c. 3572, providing for division of the property of the Osage Indians in Oklahoma, lands, exclusive of homestead, allotted to a member of that tribe, to whom a certificate of competency issued, were voluntarily alienable by him, but not subject to compulsory sale to satisfy a judgment.

2. **Indians—Lands—Incumbrance or Sale—Act of Congress.**

Act Cong. April 18, 1912, 37 Stat. 86, c. 83, is prospective in its operation.

(Syllabus by Bleakmore, C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Suit by H. G. Burt against Lottie Roe and H. M. Freas, to quiet title to, and enjoin the sale on execution of certain lands. Judgment for plaintiff, and defendants bring error. Affirmed.

Joseph D. Mitchell, for plaintiff in error.

Roberts & Mosier, for defendant in error.

Opinion by BLEAKMORE, C. This is a suit commenced in the district court of Osage county by H. G. Burt, plaintiff, against Lottie Roe and H. M. Freas, sheriff of Osage

county, defendants, to quiet title to, and enjoin the sale on execution of, certain lands. There was judgment for plaintiff on the pleadings, and defendants have appealed.

The facts, as alleged, are that the lands in suit were allotted to Ernest Roe, a member of the Osage Tribe, exclusive of his homestead. On May 19, 1910, a certificate of competency was issued to him, effective 30 days thereafter. On June 8, 1910, Lottie Roe, one of the defendants here, began an action for divorce and alimony against Ernest Roe, by filing her petition in the district court of Osage county, wherein she particularly described the lands here involved and sought to subject them to her claim for alimony, etc. An order restraining Ernest Roe from disposing of such lands issued out of said court, and together with summons, was served on him, in the presence of Martin Creed, on June 13, 1910. Regardless of the pendency of the action against him and of such restraining order, Ernest Roe conveyed the lands to Martin Creed immediately upon his certificate of competency being effective. Subsequently Creed conveyed to H. G. Burt. In June, 1911, Creed and Burt were, by supplemental petition, named as defendants in the suit for divorce and alimony. Thereafter, on June 25, 1913, Lottie Roe obtained final judgment against Ernest Roe, granting a divorce and awarding her alimony in the sum of $3,000, and declaring such judgment to be a lien upon the lands here involved.

A number of interesting questions are presented by the briefs, only one of which we deem necessary to consider, viz., Were the allotted lands of Ernest Roe subject to sale on execution in satisfaction of the judgment against him for alimony?

In construing the congressional enactment providing for division of the lands and funds of the Osage Indians in Oklahoma, approved June 28, 1906, this court has definitely determined that lands allotted to a member of that tribe to whom a certificate of competency had been issued were subject to voluntary alienation only. In Neilson v. Alberty, 36 Okla. 490, 129 Pac. 847, is was held:

"By the fourth paragraph of section 2 of Act Cong. June 28, 1906, c. 3572, 34 Stat. at L. 539, known as the Osage Allotment Act, all lands allotted to the members of the Osage Tribe were made inalienable for a period of 25 years from date of selection. Under the provisions of paragraph 7 of section 2 of said act (Act June 28, 1906, c. 3572, 34 Stat. at L. 540), adult members of the Osage Tribe, to whom certificates of competency were issued by the Secretary of the Interior, could sell and convey, manage, control, and dispose of their surplus allotted lands, but could not sell the oil, gas, coal, or other mineral covered by said lands. Said last above provision of the act applies only to voluntary conveyances by the allottee, such as were affected by the personal will of the owner, and not to the creation of liens or transmissions of title by operation of law, unless arising out of the further provision, making the surplus lands subject to taxation. A judgment was rendered in the United States court in the Indian Territory against an Osage Indian on the 1st day of December, 1903. July 30, 1909, the Secretary of the Interior approved a patent to said Indian's surplus allotment of Osage Indian lands, and on the 30th day of October following issued to said allottee a certificate of competency as authorized by Osage Allotment Act June 28, 1906, c. 3572, 34 Stat. at L. 539. On the 29th day of January, 1910, a transcript of said Indian Territory judgment was filed with the clerk of the district court of Osage county, in which county the judgment debtor's surplus lands were situated. Held, the issuance of the certificate of competency did not remove the restrictions on alienation so as to subject said lands to a judgment lien.

"Osage Allotment Act June 28, 1906, c. 3572, § 2, par. 7, 34 Stat. at L., 540, authorizes the Secretary of the Interior to issue certificates of competency to allottees, who shall then have the right to manage, control, and dispose of his or her lands the same as any citizen of the United States. Held, that the word 'manage' as so used, means to have under control, under direction, to conduct, to guide, to administer, to treat, to handle. while 'control' means to exercise restraining or governing influence over, to check, to counteract, to restrain, to regulate, to govern, to overpower, and 'to dispose of' means to exercise finally one's power of control over, to pass over into the control of some one else, as by selling, to alienate, to part with. relinquish or get rid of, and such words did not contemplate either a sale of underlying mineral or of the surplus lands by a judgment lien."

And in the body of the opinion, speaking of the effect of the issuance of a certificate of competency authorized by the seventh paragraph of section 2 of said act, it is stated:

"Such were the powers, and none other, that were conferred. They are not the legal equivalent to a removal of restrictions as used in contemporaneous Indian legislation as we shall see."

In Gray v. Deal, 50 Okla. 80, 151 Pac. 205, a case wherein, after issuance of a certificate of competency to an Osage allottee,

judgment was rendered against her, it was held:

"The issuance of a 'certificate of competency' to an adult Osage Indian, by the Secretary of the Interior, under paragraph 7, Act June 28, 1906, did not remove the restrictions on alienation so as to subject the surplus allotment of such Indian to a judgment lien rendered in an action of debt against him."

See, also, Childers v. Childers, 62 Okla. 130, 163 Pac. 948.

The courts of the state are powerless to authorize or direct a sale of lands allotted to a member of an Indian tribe in contravention of congressional enactment. Brown v. Anderson, 61 Okla. 136, 160 Pac. 724; Bowling v. United States, 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080.

It is urged, however, that authority to sell the lands in question in satisfaction of the judgment for alimony is found in an Act of Congress approved April 18th, 1912, 37 Stat. at L. 86, pt. 1, section 7 of which provides:

"That the lands allotted to members of the Osage Tribe shall not in any manner whatsoever be incumbered, taken, or sold to secure or satisfy any debt or obligation contracted or incurred prior to the issuance of a certificate of competency, or removal of restrictions on alienation; nor shall the lands or funds of Osage tribal members be subject to any claim against the same arising prior to grant of a certificate of competency. * * *"

It seems unnecessary to construe this latter act, as, whatever its effect may be in other instances, the provision quoted, unless held to operate retrospectively, is not availing to the parties in the present proceeding, for the reason that the conveyance by the allottee under which plaintiff, Burt, claims was executed nearly two years before its enactment, and at a time when the district court of Osage county was without power to bring and hold the property involved under its control for the purpose of future adjudication relative thereto.

"Statutes are to be construed as having a prospective operation unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. In every case of doubt the doubt must be resolved against the retrospective effect." Good v. Koel, 29 Okla. 325, 116 Pac. 777.

Judgment of the trial court should be affirmed.

By the court: It is so ordered.