## UNITED STATES v. CANDELARIA et al.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1926.)

No. 6594.

Judgment ⊜949(4)—Pleadings in suit by government to recover Indian lands held to show suit was barred by adjudication of state court in suit by special attorney paid by government (Act July 1, 1898 [30 Stat. 594]).

Pleadings in suit by the United States, as guardian of Indians of pueblo of Laguna, to recover certain lands, *held* to show that a previous action involving the same land had been brought by the pueblo, represented by a special attorney appointed to represent them by the United States, and warrant dismissal of petition on ground of res judicata, in view of Act July 1, 1898 (30 Stat. 594), and subsequent similar legislation.

Appeal from the District Court of the United States for the District of New Mexico.

Suit by the United States, as guardian of the Indians of the Pueblo of Laguna, against Jose Candelaria and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

Ralph E. Twitchell, Sp. Asst. Atty. Gen. and Frank W. Clancy, of Santa Fé, N. M., for appellees.

Before STONE, Circuit Judge, and MUNGER and MILLER, District Judges.

STONE, Circuit Judge. The United States District Court for the District of New Mexico entered a decree upon the pleadings, dismissing an action brought by the United States, as guardian of the Indians of the pueblo of Laguna, against Jose Candelaria and other claimants to certain lands in that state. The pleadings consisted of the petition, answer and replication. The allegations of each of these pleadings was as follows:

### Bill of Complaint.

The suit was brought by authority of the Attorney General of the United States, at the request of the Secretary of the Interior, in furtherance of the Indian policy of the government, which is functioning as the guardian of the pueblo of Laguna, a tribe of Pueblo Indians, wards of the United States, incompetent to manage their own affairs, and from a period prior to the year A. D. 1769, the owner of, residing on, cultivating and using for agricultural and pastoral purposes a grant or tract of land situated in the county of Valencia, state of New Mexico, known as the "Paguate Purchase," confirmed to the pueblo of Laguna by Act of Congress, March 3, 1869 (15 Stat. 342), and patented by the United States of America pursuant to said confirmation, September 22, 1884. The action of the government officials in bringing the suit was in the general line of official duty in defense of and seeking a judicial determination of the title of the pueblo of Laguna to the tract or grant of land set out and described in the bill of complaint.

The tract of land in question was originally granted by the government of Spain to certain individuals, whose heirs and assigns, prior to A. D. 1769, sold and conveyed the same to the pueblo of Laguna by deed, in the execution of which the Spanish authorities participated, and which conveyance was subsequently, by deed, June 1, A. D. 1820, executed by a Spanish official known as the "Protector General of the Indians," recognized and confirmed as a conveyance of the said tract to the said pueblo, and again, on August 26, 1826, the last mentioned deed was approved by the then governor of the province of New Mexico.

At the time of the acquisition of New Mexico by the United States of America, February 7, 1848, the said pueblo of Laguna was in the possession, and claiming absolute ownership and title under the foregoing conveyances, of the said tract of land known as the "Paguate Purchase," and under the provisions of the treaty of Guadalupe Hidalgo, by virtue of which New Mexico became a portion of the territory embraced within the limits of the United States of America, the said pueblo of Laguna, and the

Indians thereof, became and were entitled to its protection and all the benefits accruing to them thereunder.

Within the areas contained in the said "Paguate Purchase" there are certain tracts known locally as the Valle Lindero, Piedra Lumbre, and Chupadero, upon which some of the Indians of the pueblo, individually, have cultivated lands for many years, and on which said locally known tracts some of the defendants were permitted by the Indians of said pueblo to cultivate certain areas without interference or molestation. But during the years 1906, 1907, 1908 and 1909, these defendants commenced the fencing of other lands in said locally known tracts, belonging to the said pueblo, by which the Indians were excluded from lands which they had cultivated and irrigated for many years, and, by threats, trespasses and in other ways, endeavored to expel the Indians from the choice lands lying in said locally known places.

The pueblo of Laguna was established by the Spaniards in the year 1698, under royal authority and pursuant to the rules and regulations of the crown of Spain made and provided for the establishment of Indian pueblos in New Spain, of which the province of New Mexico was a part, the Indians constituting said pueblo being made up of the members of several tribes who had abandoned their habitat in other pueblo villages in New Mexico during the wars of the reconquest of the province of New Mexico in the years 1692–1696; during all the years subsequent thereto the Indians of the pueblo of Laguna have lived in villages located at various places upon their lands, among which is the village of Paguate, which is situated within the lands constituting the said "Paguate Purchase" and located about half a mile south of the said locally known tract of Valle Lindero.

The defendants live and have their homes at villages located a short distance north of the north boundary of the "Paguate Purchase," known as Cebolleta and Moquino; they and their predecessors "squatted" upon divers and sundry small tracts in the said Valle Lindero, Piedra Lumbre and Chupadero, and are now claiming all of said tracts adverse to the title of the said pueblo of Laguna, and have also attempted to monopolize, to the exclusion of the Indians, large and valuable tracts of land suitable for grazing purposes within the exterior boundaries of the said "Paguate Purchase," and the said defendants are claiming title to these tracts within the "Paguate Purchase" under a grant, deed or some other instrument in writing, purporting to convey the title to the particular lands so claimed by them.

#### Answer.

The defendants in their answer denied the wardship of appellant. They admitted that the pueblo of Laguna was the owner of the tract of land known as the "Paguate Purchase"; that such ownership had existed since the passage of the Act of Congress of March 3, 1869; that the northern boundary of said "Paguate Purchase" was a place known as the Mesa del Gabilan; admitting also the issue by the United States of America of a patent to said pueblo, but declaring that the description in said patent included land far to the north of the said Mesa del Gabilan. Defendants further answering declared that the Indian claim to such land north of the said Mesa del Gabilan had been, prior to the filing of this suit, adjudicated adversely to the pueblo of Laguna by the district court of the county of Valencia, in the territory of New Mexico, in a suit instituted by said pueblo in February, 1910, for the purpose of quieting the Indian title to the tract of land in the bill of complaint described, and in which suit many of the defendants herein had been named as defendants; and that by said adjudication, the territorial court had found as matter of fact that the said "Mesa del Gabilan lies to a considerable distance southeast of the Indian town called Paguate, and that the junction of the Canada del Pedro Padilla, which is the other call for said southeast boundary for said Cebolleta grant, lies directly east from said Mesa del Gabilan, the line from said Mesa and the point of junction of the said Canadas being the true boundary line of said Cebolleta grant, the said true boundary line and the surveyed southeast boundary line of the Cebolleta grant being a part of the land described and set forth in the complaint," and that "the defendants and their ancestors and predecessors in title had been, from a time beyond the memory of any living man, in the open, notorious and exclusive possession of portions of the land lying between said true boundary line and said surveyed line of the Cebolleta grant," which is set up in the case at bar as the northeast boundary of the land claimed by said pueblo; and that by the survey of the Cebolleta grant the southern line of said grant was established far to the north of its actual location on the earth's surface;

and that the defendants had such possession under a claim of ownership of the land between said two lines under said Cebolleta grant, except that they had not interfered or undertaken to interfere with the Indians at or near the village of Paguate, and that their occupation and possession had been open and notorious, and that no claim by suit at law or in equity had ever been made by the Indians for said tract until said suit was begun; that in said suit so brought by the pueblo of Laguna in the territorial court it was adjudged that the said pueblo was "not entitled to any relief against the defendants claiming under the Cebolleta grant," but that the conclusion was not to be allowed to interfere in any way with the Indians who, before 1908, had been in possession of and cultivating lands north of the said true boundary line of the Cebolleta grant; and that, under the decree of said territorial district court, it was held that the said pueblo take nothing by its complaint and that the cause be dismissed.

In other words, it was held by the territorial district court that a conflict existed between the southern boundary line of the Cebolleta grant as surveyed and the northern boundary line of the "Paguate Purchase," constituting an overlap to which those claiming under the Cebolleta grant had the superior title.

Defendants also stated in their answer that, on March 17, 1916, the pueblo of Laguna instituted another suit in the United States District Court for the District of New Mexico, for the purpose of quieting its title to the same tract of land which was the subject of the suit in the district court of Valencia county, in the territory of New Mexico, which later suit, on motion of the defendants, on January 29, 1920, had been dismissed for the reason that the district court of Valencia county, New Mexico, had jurisdiction of the case in that court, and that the matters presented by the complaint in the District Court for the United States were res judicata and that there was no federal question in the case.

### Replication.

The replication alleged that the judgment in the state suit had been made and entered subsequent to statehood; that the United States of America, as guardian of the pueblo of Laguna and the Indians thereof, was not a party to said suit so brought by the pueblo of Laguna in the district court for Valencia county, territory of New Mexico, nor in the suit brought by

16 F.(2d)—36

the said pueblo of Laguna in the United States District Court for the District of New Mexico, and had never authorized the bringing of said suits by said pueblo of Laguna, and the attorney appearing for said pueblo in said suits did not, at the time of the bringing thereof, nor at any time thereafter, represent the United States of America, and that the plaintiff is not bound by any judgment or decree of said courts respectively entered in said causes.

### Decree.

By its order and decree dismissing the bill of complaint in the case at bar, the District Court for the District of New Mexico found as matter of law that the pueblo of Laguna was a corporation by virtue of a statute of the territory of New Mexico and capable of suing in respect of its lands, and that this territorial statute was not inconsistent with the guardianship of the United States over the Indians of the pueblo of Laguna, and that the district court of Valencia county, New Mexico, was a court of general, unlimited jurisdiction, with jurisdiction of the subject-matter and of the parties in the suit instituted in that court by the pueblo in 1910, and that its decree therein was a final adjudication of the matters presented in that suit and binding upon the parties thereto, and furthermore, was a complete adjudication of the matters presented by the bill of complaint in the present suit and operating as a bar to the prosecution thereof, and that the dismissal of the suit instituted by the pueblo on the 17th of March, 1916, in the United States District Court for the District of New Mexico, was a further adjudication of the matters presented by the bill of complaint and was also a bar to the prosecution of the present case.

This court deemed the questions involved here of such importance and uncertainty that it certified to the Supreme Court two questions, as follows:

"Question I. Are Pueblo Indians in New Mexico in such status of tutelage as to their lands in that state that the United States, as such guardian, is not barred either by a judgment in a suit involving title to such lands begun in the territorial court and passing to judgment after statehood or by a judgment in a similar action in the United States District Court for the District of New Mexico, where, in each of said actions, the United States was not a party nor was the attorney representing such Indians therein authorized so to do by the United States?

"Question II. Did the state court of New Mexico have jurisdiction to enter a judgment which would be res judicata as to the United States, in an action between Pueblo Indians and opposed claimants concerning title to land, where the result of that judgment would be to disregard a survey made by the United States of a Spanish or Mexican grant pursuant to an act of Congress confirming such grant to said Pueblo Indians?"

These questions were answered by the Supreme Court in United States v. Candelaria, 271 U. S. 432, 46 S. Ct. 561, 70 L. Ed. 1023. The answer to the first question was as follows:

"To the first question we answer that the United States is not barred. Our reasons will be stated. The Indians of the pueblo are wards of the United States and hold their lands subject to the restriction that the same cannot be alienated in any wise without its consent. A judgment or decree which operates directly or indirectly to transfer the lands from the Indians, where the United States has not authorized or appeared in the suit, infringes that restriction. The United States has an interest in maintaining and enforcing the restriction which cannot be affected by such a judgment or decree. This court has said in dealing with a like situation: 'It necessarily follows that, as a transfer of the allotted lands contrary to the inhibition of Congress would be a violation of the governmental rights of the United States arising from its obligation to a dependent people, no stipulations, contracts, or judgments rendered in suits to which the government is a stranger, can affect its interest. The authority of the United States to enforce the restraint lawfully created cannot be impaired by any action without its consent.' Bowling and Miami Improvement [Investment] Co. v. United States, 233 U. S. 528, 534 [34 S. Ct. 659, 58 L. Ed. 1080]. And that ruling has been recognized and given effect in other cases. Privett v. United States, 256 U. S. 201, 204 [41 S. Ct. 455, 65 L. Ed. 889]; Sunderland v. United States, 266 U. S. 226, 232 [45 S. Ct. 64, 69 L. Ed. 259].

"But, as it appears that for many years the United States has employed and paid a special attorney to represent the Pueblo Indians and look after their interests, our answer is made with the qualification that, if the decree was rendered in a suit begun and prosecuted by the special attorney so employed and paid, we think the United

States is as effectually concluded as if it were a party to the suit. Souffront v. [La] Compagnie des Sucreries, 217 U. S. 475, 486 [30 S. Ct. 608, 54 L. Ed. 846]; Lovejoy v. Murray, 3 Wall. 1, 18 [18 L. Ed. 129]; Claflin v. Fletcher [C. C.] 7 F. 851, 852; Maloy v. Duden [C. C. A.] 86 F. 402, 404; James v. Germania Iron Co. [C. C. A.] 107 F. 597, 613."

The answer to the second question was as follows:

"Coming to the second question, we eliminate so much of it as refers to a possible disregard of a survey made by the United States, for that would have no bearing on the court's jurisdiction or the binding effect of the judgment or decree, but would present only a question of whether error was committed in the course of exercising jurisdiction. With that eliminated, our answer to the question is that the state court had jurisdiction to entertain the suit and proceed to judgment or decree. Whether the outcome would be conclusive on the United States is sufficiently shown by our answer to the first question."

There is no contention that the United States was a formal party to either the case in the state court or the earlier case in the trial court. Therefore, from the issues made by the pleadings, the questions propounded by this court and the answers thereto by the Supreme Court, it is evident that the crux of this appeal is whether the suit in the state court was begun and prosecuted by a special attorney employed by the United States to represent the pueblo.

The answer herein alleges that such suit in the state court "was brought by Francis C. Wilson, then officer of the complainant in the present case, in his official capacity as special attorney for the Pueblo Indians." The replication alleges "that the attorney appearing for said pueblo in said suit and litigation did not at the time of the bringing of said suit, nor at any time thereafter, represent the United States of America," and, in another part thereof, "that the attorney representing the pueblo of Laguna in the bringing of said suit did not represent and had no authority to represent the United States of America, plaintiff herein, in said litigation." It will be noted that the replication makes no clear denial that Wilson was not, at the time the suit was brought, a "special attorney for the Pueblo Indians" as alleged in the answer. The replication is to the effect that Wilson did not "represent the United States of America." Attached to the

answer, as an exhibit, is the complaint filed in the state court in behalf of the pueblo. That complaint begins as follows:

"Comes now the. Pueblo de Laguna, a community of Pueblo Indians, constituted by law, a corporation under and by virtue of the statute of the territory of New Mexico, by F. C. Wilson, special attorney for the Pueblo Indians of New Mexico, and complaining of the defendants, alleges."

. It is signed and sworn to by Wilson, who designates himself as "Special Attorney for the Pueblo Indians of New Mexico." The Statutes at Large reveal that, in 1898, an appropriation was made by Congress for "a special attorney for the Pueblo Indians of New Mexico" (30 Stat. 594). Annually thereafter until several years later than the judgment in the state court, this same appropriation appears (30 Stat. 940; 31 Stat. 1077; 32 Stat. 265 and 999; 33 Stat. 207 and 1063; 34 Stat. 359 and 1041; 35 Stat. 86 and 799; 36 Stat. 278 and 1067; 37 Stat. 528; 38 Stat. 92 and 594). Considering the above facts that there was congressional authorization for such special attorney, that the complaint is brought by one stating that he is acting as such special attorney, that the answer herein alleges that such person was such special attorney and the absence of a clear denial thereof in the replication, we think we should hold from this record that Wilson was acting in that capacity.

Applying to such holding the rule announced by the Supreme Court in the latter part of its answer to certified question I in this case necessitates the conclusion that the United States was bound by the adjudication in the state court. Therefore, the trial court was correct in its determination and its decree should be and is

Affirmed.