## UNITED STATES v. MATHEWSON et al. *

Circuit Court of Appeals, Eighth Circuit.
May 1, 1929.

No. 8169.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., George A. Keyser and William J. Froelich, Asst. U. S. Attys., all of Omaha, Neb., and Philip M. Aitken, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Cecil R. Boughn and Roy B. Carlberg, both of Pender, Neb., for appellees.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

VAN VALKERBURGH, Circuit Judge. Lucy Woodhull was an incompetent Omaha

Indian, residing upon the Omaha Indian Reservation in Thurston county, Nebraska. May 23, 1900, she was entitled to receive an allotment of land under the provisions of the Act of Congress of March 3, 1893, and on that day did receive from the United States a trust patent for the south half (S½) of the southwest quarter (SW¼) of section two (2), in township twenty-four (24) north, in range eight (8), east of the sixth principal meridian, in Thurston county, Nebraska, which is the land duly awarded to her as an allottee, as aforesaid. By this patent it was provided that the United States should and would hold the land thus allotted for a period of 25 years in trust for the sole use and benefit of the allottee and her heirs. It was further provided that, if any conveyance should be made of such lands, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract should be absolutely null and void. In the year 1925, prior to May 23d, by executive order the provision in said patent with reference to the alienation of said allotted lands was extended for a period of 10 years, and the restriction thereby created is in terms now in full force and effect.

By Act of Congress approved June 25, 1910 (36 Stat. 855, 856), it was provided:

"Sec. 2. That any Indian of the age of twenty-one years, or over, to whom an allotment of land has been or may hereafter be made, shall have the right, prior to the expiration of the trust period and before the issue of a fee simple patent, to dispose of such allotment by will, in accordance with rules and regulations to be prescribed by the Secretary of the Interior: Provided, however, that no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Commissioner of Indian Affairs and the Secretary of the Interior: Provided further, that sections 1 and 2 of this act shall not apply to the state of Oklahoma."

On May 9, 1911, Lucy Woodhull executed and offered for probate to the Secretary of the Interior of the United States her last will and testament. By this will she gave and devised her allotment as follows:

"Unto my husband Spafford Woodhull during his lifetime, giving him the right to live on and farm and use and occupy the same at will while he may live—but if any part thereof shall be rented by my said husband, one-half of the rent shall belong to him and one-half of such rent shall be divided equally among my four children,

Eunice V. Woodhull and George Woodhull and Jennie Woodhull and Rosalie Woodhull, share and share alike, and upon the death of my said husband, Spafford Woodhull, it is my will that my allotment above described shall descend to my four children, Eunice V. Woodhull, George Woodhull, Jennie Woodhull, and Rosalie Woodhull, equally share and share alike and I desire the Secretary of the Interior to issue patents for said premises at the proper time in accordance with the bequest."

This will was duly approved and allowed by the Secretary of the Interior December 16, 1911. Meantime, on May 18, 1911, Lucy Woodhull died, leaving as her heirs and devisees her husband and children named in her will. January 1, 1912, the children of Lucy Woodhull transferred to their father, Spafford Woodhull, all of their rights and interest to the rents and profits in the real estate during his lifetime, and he is now the owner of a life estate therein. November 2, 1916, all of said children, except Eunice Woodhull, now Eunice Woodhull Stabler, conveyed by deed to the latter all of their interests in said allotment under the trust patent, subject only to the life estate of Spafford Woodhull. This deed was duly approved by the Secretary of the Interior on May 16, 1917, and contained the condition "that no deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto shall be of any form and effect or capable of confirmation or ratification, prior to the 9th day of July, 1919, unless approved by the Secretary of the Interior or his successor in office."

In each of the years from 1920 to 1925, inclusive, the taxing officers and agencies of Thurston county, Nebraska, assessed taxes against the above-described land for general, state, county, school, township, and other purposes, and levied the same. On February 7, 1927, the county treasurer of said county offered said land for sale for delinquent taxes levied and assessed for the years above named, and sold the same to appellee, G. E. Mathewson, for the amount of the taxes so assessed against the real estate for said several years, together with interest thereon, amounting to the sum of $1,052.78. The taxing authorities of the county have also assessed taxes against said lands for the year 1926, in the sum of $128.63, and the county treasurer threatens to enforce the collection thereof by sale. Appellant, United States, therefore, brought this suit, praying that all taxes be declared illegal and void;

that the tax certificate issued by the county treasurer to appellee Mathewson, and held by him, or whomsoever he may represent, shall be declared null and void; and that the levy of taxes prior to the year 1926 be canceled and set aside.

To this action appellees filed a motion to dismiss, which was sustained, and a decree was entered in favor of appellees. The ground of his decision is thus stated by the trial judge:

"I am persuaded that the Act of June 25, 1910, 36 Stat. 855, which gives an Indian of the age of 21 years a right to dispose of his allotment by will, means that he has a right to so dispose of the land by will, and where an Indian has availed himself of the right accorded and has devised the land by will approved by the Secretary and Commissioner of Indian Affairs, the devisee gets a good title and the land becomes subject to taxation."

Two questions are presented for our determination. First, whether the devise by will, under the act of 1910, irrevocably subjected the lands to taxes; and if not, then, second, whether the deed of November 2, 1916 to Eunice Woodhull Stabler, with the approval of the Secretary of the Interior, had that effect? In view of the conclusion at which we have arrived, only the latter of these questions needs to be considered.

Spafford Woodhull, the husband, and the children of Lucy Woodhull, the testatrix, were all Omaha Indians. By devise through the will they took substantially what they would have received by inheritance. In short, the land would have passed, as it did, from restricted hands to restricted hands. There was neither devise nor conveyance to an outsider not subject to restrictions.

"Transfer by descent from one tribal Indian to another of land allotted and patented by the United States to the ancestor with a prohibition against alienation is not taxable by the state where the land lies, during the restriction on the title." Childers v. Beaver, 270 U. S. 555, 46 S. Ct. 387, 70 L. Ed. 730.

"Restrictions upon alienation of this character attach to and run with the land, and the inability to convey disqualifies the heir as well as the immediate allottee." Aaron et al. v. United States (C. C. A. 8) 204 F. 943; Johnson v. United States (C. C. A. 8) 283 F. 954; Goodrum v. Buffalo (C. C. A. 8) 162 F. 817–823; Bowling v. United States (C. C. A. 8) 191 F. 19, affirmed 233 U. S. 528, 34 S. Ct. 659, 58 L. Ed. 1080; United States v. Noble, 237 U. S. 74,

35 S. Ct. 532, 59 L. Ed. 844; United States v. Board of Com'rs of Osage County, Oklahoma (C. C.) 193 F. 485–488, affirmed (C. C. A. 8) 216 F. 883–885.

It has been argued that the Supreme Court, in Levindale Lead & Zinc Mining Co. v. Coleman, 241 U. S. 432, 36 S. Ct. 644, 60 L. Ed. 1080, has modified the principle announced in the foregoing cases. The court in that case has pointed out a somewhat obvious exception, but it has strengthened, rather than impaired, the substance of the principle. It was there held that a statute should be construed in the light of its obvious policy; that restrictions such as those contained in the Osage Indian Allotment Act of June 28, 1906 (34 Stat. 539), do not run with the land until they attach, and then only in accord with the intendment of the Act. For this reason, they do not apply to lands or interests in lands coming lawfully into ownership of white men who are nonmembers of the Osage Tribe. In the body of the opinion Mr. Justice Hughes says:

"The provisions of the Allotment Act must be construed in the light of the policy they were obviously intended to execute. It was a policy relating to the welfare of Indians—wards of the United States. The establishment of restrictions against alienation 'evinced the continuance, to this extent at least, of the guardianship which the United States had exercised from the beginning.' Heckman v. United States, 224 U. S. 413, 436 [32 S. Ct. 424, 56 L. Ed. 820]; United States v. Kagama, 118 U. S. 375, 384 [6 S. Ct. 1109, 30 L. Ed. 228]; United States v. Rickert, 188 U. S. 432, 437, 438 [23 S. Ct. 478, 47 L. Ed. 532]; Tiger v. Western Investment Co., 221 U. S. 286, 316 [31 S. Ct. 578, 55 L. Ed. 738]; Williams v. Johnson, 239 U. S. 414, 420 [36 S. Ct. 150, 60 L. Ed. 358]. This policy did not embrace white men—persons not of Indian blood—who were not as Indians under national protection, although they might inherit lands from Indians; and, with respect to such persons, it would require clear language to show an intent to impose restrictions."

It will be seen that this limitation in nowise affects the general doctrine of the cases cited above as applied to the one before us. By treaty it was provided that restricted Indian lands are not taxable until otherwise provided by Congress. Certainly Congress has never provided directly for the taxation of these lands. The claim that it has done so indirectly rests upon construction of the Act of February 14, 1913.

■■■■ Until May 16, 1917, the date of approval by the Secretary of the Interior of the deed to Eunice Woodhull Stabler of November 16, 1916, the land remained in the hands of the husband and heirs of Lucy Woodhull, all restricted Indians. By Act of February 14, 1913 (37 Stat. 678 [25 USCA § 373]), it was provided that in case of devise by will "the approval of the will and the death of the testator shall not operate to terminate the trust or restrictive period." Therefore it would seem that the lands in question were effectively restored to their original status, if that status may be conceived to have been lost through devise by will. It is beyond question that Congress has the power to reimpose restrictions on property already freed. 31 C. J. 541; McCurdy v. United States, 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706; Brader v. James, 246 U. S. 88, 38 S. Ct. 285, 62 L. Ed. 591; United States v. Shock (C. C.) 187 F. 870. And during the period of existing restrictions it may extend that period or add other restrictions. 31 C. J. supra; Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820; Tiger v. Western Investment Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738; Blanset v. Cardin (C. C. A.) 261 F. 309, affirmed 256 U. S. 319, 41 S. Ct. 519, 65 L. Ed. 950.

We do not lose sight of the rule that land subject to state taxation, which is purchased with restricted funds, may still be subject to such taxation, although the deed conveying it contains restrictions against alienation except with consent of the Secretary of the Interior. United States v. Mummert (C. C. A. 8) 15 F.(2d) 926; Shaw v. Gibson-Zahniser Oil Corporation, 276 U. S. 575, 48 S. Ct. 333, 72 L. Ed. 709. But the devise by will took effect December 16, 1911; that devise, as we have seen, lodged the title in those to whom, in the absence of a will, it would have descended by inheritance. There the title remained, with the exception of an incidental disposition of the rents and profits, until November 2, 1916, when the other heirs in remainder conveyed to Mrs. Stabler. In this deed of conveyance it is significant that, although she was the grantee, Mrs. Stabler joined. It was approved by the Secretary of the Interior May 16, 1917, and by its terms kept alive restrictions against alienation until July 9, 1919, except with approval by the Secretary of the Interior.

It is provided by the Act of February 14, 1913: "That the approval of the will and the death of the testator shall not operate to terminate the trust or restrictive period, but the Secretary of the Interior may, in his discretion, cause the lands to be sold and the

money derived therefrom, or so much thereof as may be necessary, used for the benefit of the heir or heirs entitled thereto, remove the restrictions, or cause patent in fee to be issued to the devisee or devisees, and pay the moneys to the legatee or legatees either in whole or in part from time to time as he may deem advisable, or use it for their benefit."

By this portion of the statute the Secretary of the Interior was given the right to remove the restrictions from this land, and, in his approval of the deed, he did remove the restrictions, so that the land was subject to taxation after July, 1919. The land was not assessed for state taxes until 1920. In our opinion, the conveyance by the heirs of Lucy Woodhull, with the consent and approval of the Secretary of the Interior, exposed the land to taxation not later than that date in any event.

This being the case, the judgment below must be affirmed; and it is so ordered.