## UNITED STATES v. DRUMMOND.

### No. 672.

District Court, W. D. Oklahoma.

Oct. 20, 1941.

Geo. H. McElroy, Asst. U. S. Atty., of Oklahoma City, Okl., for plaintiff.

Hamilton & Kane, of Pawhuska, Okl., for defendant.

VAUGHT, District Judge.

The United States brought this action against the defendant R. C. Drummond to set aside and cancel a certain sheriff's deed in favor of said defendant affecting one hundred and sixty acres of land in Kay County, Oklahoma, and to quiet title thereto in the plaintiff.

Said land was conveyed to U-til-la, a duly enrolled Kaw Indian, by a homestead deed dated May 1, 1903, pursuant to Act of Congress approved July 1, 1902, 32 Stat. 636. The deed was signed by the Head Chief of the Kansas or Kaw Tribe of Indians, approved by the Secretary of the Interior, and provided: "* * * subject, however, to all the conditions, limitations, and provisions of said Agreement, one of which is that said *homestead* shall be nontaxable and inalienable for the period of twenty-five years from the first day of

January, 1903, except as in said Agreement provided."

The "Agreement" referred to is the agreement of the Kaw Indians among themselves for an equal division of their tribal lands, as ratified and confirmed by the Act of Congress, supra. Section 2 of said Act provided that the one hundred and sixty acres of land set aside for an homestead "shall be nontaxable and inalienable for the period of twenty-five years," the same as in said deed.

Section 10 of the above Act provided that the Secretary of the Interior may authorize any adult member of the tribe to sell and convey any of the lands deeded him by such agreement, or may issue him a certificate of competency and *thereafter* "the lands of such member, both homestead and surplus, shall become subject to taxation," et cetera.

Section 11 of said Act provided that lands inherited from any deceased Kaw Indian may be sold and conveyed by adult heirs, and if there are minor heirs, they may join in the sale by a guardian duly appointed by the proper court of the county in which said minors may reside, all such conveyances to be subject to the approval of the Secretary of the Interior.

The restrictions upon alienation of such homestead allotments were extended for an additional twenty years by Act of Congress approved May 27, 1924, 43 Stat. 176.

■ According to the stipulation filed herein, U-til-la died testate on June 22, 1914. By his will, which was duly approved by the Secretary of the Interior in accordance with the provisions of the Act of February 14, 1913, 37 Stat. 678, 25 U. S.C.A. § 373, said allottee bequeathed a one-third interest in his homestead allotment (the land here involved) to Augustine Black, his common-law wife, and two-thirds to his daughter, May Straight Up (Mary Black). These devisees were both enrolled as full-blood members of the Osage Tribe of Indians, and the defendant contends that when said daughter subsequently died, the laws with relation to inherited lands of Osage allottees should apply to that portion of this land which she took by devise. With such contention this court cannot agree. The land here involved is subject only to the provisions of the Acts of Congress with relation to the Kaw Indians.

It further appears from the stipulation that May Straight Up (Mary Black) married one Frank Deroin (DeRoin) who, according to the complaint, was a duly enrolled member of the Otoe Tribe of Indians (erroneously referred to in the stipulation as a Pawnee Indian.) Mary Black Deroin died on or about May 18, 1928, survived by Frank Deroin, her husband, and Mildred Deroin, her daughter, as her sole and only heirs. The county court of Osage County, Oklahoma, probated the estate of Mary Black Deroin and on December 16, 1929, determined her heirs as above and decreed each of them to be the owner of an undivided one-half interest in the two-thirds interest which the decedent owned in the land here involved. Thus, Frank Deroin was the owner of an undivided one-third interest in the land here under consideration at the time the sheriff of Kay County levied upon same and sold such interest on April 26, 1936, to the defendant herein to satisfy a judgment which the defendant had obtained against said Frank Deroin in the district court of Osage County. The Secretary of the Interior has not approved said sheriff's deed.

The question before this court is, Did such sheriff's deed legally convey an undivided one-third interest in the land here involved to the defendant R. C. Drummond? If it did, the prayer of the plaintiff must be denied and judgment rendered in favor of the defendant.

The defendant first contends that the restrictions on alienation apply to members of the Kaw Tribe and not to nonmembers.

The provision against alienation of the homestead does not provide that it shall be inalienable only in the hands of the allottee nor in the hands of members of the tribe, but says, "there shall be set aside * * * one hundred sixty (160) acres of land for an homestead, which shall be nontaxable and inalienable for a period of twenty-five years."

Section 10 of the Act, supra, refers to "any adult member of said tribe," authorizing him "to sell and convey any or all lands deeded to him by reason of this agreement." This provision for removal of restriction is certainly personal to the "member of said tribe," and is, no doubt, the reason for the defendant's contention that the restrictions, as well, apply only to tribal members and that the inference is clear that it was unnecessary for Congress to provide for removal of restrictions on the interest of nonmembers of the tribe, because it had never restricted such interests as came into their hands. Such section of the Act dealt exclusively with lands deeded to the members of the tribe "by reason of this agreement," in other words, their own allotments, and had no reference to those who took from them by purchase or descent.

The section of the Act, supra, which relates to lands in the hands of heirs of Kaw Indians, is Section 11 and reads as follows: "That the adult heirs of any deceased Kansas or Kaw Indian, whose selection has been made or to whom a deed has been issued for his or her share of the lands of said tribe in Oklahoma Territory, may sell and convey the lands inherited from such decedent; and, if there be both adult and minor heirs of such inherited lands, then such minors may join in a sale thereof by a guardian duly appointed by the proper court of the county in which said minor or minors may reside, upon an order of such court made upon petition filed by such guardian; all conveyances made under this provision to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

It is noted that nothing is said about membership in the tribe. It provides that heirs of "any deceased Kansas or Kaw Indian * * * may sell and convey the lands inherited from such decedent"; subject to the approval of the Secretary of the Interior. This negatives the contention of the defendant that the restrictions applied exclusively to those of Kaw blood.

The defendant's next proposition is that Frank Deroin was not an heir of the allottee U-til-la and that the restrictions do not "bind the heirs of the heirs of the allottee." He goes further and says: "Mary Black Deroin was not an heir because she was a member of the Osage Tribe and because she took under the will of the decedent."

Frank Deroin definitely was not an heir of the allottee. He married the allottee's daughter years after the death of the allottee. There was nothing in the Kaw Agreement limiting heirship to duly enrolled members of the Kaw Tribe. The court does agree with the defendant's contention that said daughter acquired her interest in this land "under the will" and not by descent as an heir.

This situation calls for a consideration of the Act of Congress approved February 14, 1913, 37 Stat. 678, 25 U.S.C.A. § 373, which has not been mentioned or considered in the brief of either party. The allottee conveyed this land by his will, which was duly approved by the Secretary of the Interior under the provisions of the last mentioned Act of Congress.

The Supreme Court has construed said Act in Blanset v. Cardin, 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950, as evidencing the intention of Congress to permit this class of Indians to dispose of their property by will free from the restrictions of state laws, but subject to the approval of the will by the Secretary of the Interior.

Said Act has been more recently construed by the Circuit Court of Appeals, Eighth Circuit, in United States v. Mathewson, 8 Cir., 32 F.2d 745, wherein it was held that the approval of the will by the Secretary of the Interior did not operate to terminate the restrictive period, but restored the restricted lands to their original status.

The Act in question, after setting out that "any persons * * * having any right, title, or interest in any allotment * * * shall have the right * * * to dispose of such property by will, in accordance with regulations to be prescribed by the Secretary of the Interior" et cetera, states: "Provided further, That the approval of the will and the death of the testator shall not operate to terminate the trust or restrictive period, * * *."

■ Definitely, therefore, the land here involved was still restricted in the hands of the devisee under the will, contrary to the defendant's contentions.

Next, it will be necessary to dispose of the contention that upon the death of Mary Black Deroin (May Straight Up) in 1928 her husband, Frank Deroin, inherited one-half of her interest in this land free of all restrictions imposed by the Kaw Agreement.

The defendant strenuously contends that since Frank Deroin was an Otoe Indian and inherited from his wife who was an Osage Indian, the restrictions upon alienation of the homestead of the allottee, a Kaw Indian, would not apply; that Frank Deroin inherited his interest in said land free of any restrictions; that said land therefore was subject to involuntary alienation; and, that the sheriff's deed thereto, pursuant to an execution to satisfy a judgment, is valid and must be upheld. Levindale Lead & Zinc Mining Co. v. Coleman, 241 U.S. 432, 36 S.Ct. 644, 647, 60 L.Ed. 1080, is cited as substantiating such position.

That case construed the Act of Congress relating to allotments made to Osage Indians, and held that said Act "placed no restrictions upon the alienation of land, or undivided interests in land, of which white men who were not members of the tribe became owners."

That case is in no way analogous to the case at bar. Here the rights of a white man are not involved. All of the parties owning interests in this land are Indians, living under the protective arm of the Federal Government.

The Act of Congress ratifying the Kaw Agreement does not make any distinction as to heirs who are of Indian blood, of the blood of the Tribe, or of no Indian blood.

■ The courts have consistently construed Acts of Congress relating to Indians in such manner as to give the greatest protection possible to the Indians and it was the purpose of Congress to protect Indians, as here involved. See Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259.

No case has been cited in the briefs of either party construing the Kaw Allotment Act, or the Act extending the restrictions upon the Kaw homestead allotments, supra, and the court has found no such case.

The defendant calls attention to United States v. Mullendore, D.C., 30 F.Supp. 13, wherein the same parties as here were involved, but wherein the United States District Court for the Northern District of Oklahoma had under consideration lands located in Osage County and allotted under Acts of Congress affecting Osage Indians. The court there held that Frank Deroin not being an Osage Indian inherited his interest in the Osage lands free from restriction. But the Act of April 18, 1912, 37 Stat. 86, relating exclusively to Osage Indian allotments, provides specifically that "when the heirs of such deceased allottees * * * are not members of the tribe, the restrictions on alienation are hereby removed." There was no such provision in the Acts relating to allotments of Kaw Indians.

Attention is called to Taylor v. Jones, 10 Cir., 51 F.2d 892, 893, which, while not analogous to the situation here involved, is somewhat similar. In that case a Kaw allottee inherited one-half of an Osage headright. She had received a certificate of competency from the Secretary of the Interior. She was adjudged a bankrupt, and the trustee in bankruptcy attempted to take said headright interest into the bankrupt estate. It was his contention that when Congress, by the Act of April 12, 1924, 43 Stat. 94, authorized the alienation of headrights inherited by one "not an Indian by blood," it meant not of Osage blood. The Circuit Court of Appeals, Tenth Circuit, stated:

"The bankrupt is an Indian by blood; Congress has the same power over her and her property as it has over an Osage; doubtless the same considerations of public policy that prompted Congress to withhold from Osages the right to alienate these headrights, prevailed as to Indians of other tribes."

Finding no cases construing the Acts of Congress relating to the Kaw Indians, the textbooks have been consulted. Mills on "Oklahoma Indian Land Laws", page 370, section 383, referring to restrictions upon the homestead of Kaw Indians, states:

"The restrictions is (sic) certainly broad enough to include both voluntary and involuntary alienation. And, following the construction of similar provisions in the agreements with the Five Civilized Tribes, undoubtedly runs with the land and attaches to it in the hands of the heirs, as well as the allottee."

This court adopts such statement as the proper construction of said Act, and as further authority calls attention to the case of Bowling v. United States, 233 U.S. 528, 34 S.Ct. 659, 58 L.Ed. 1080, and the many cases which follow it, including the recent case of United States v. Gilbertson, 7 Cir., 111 F.2d 978.

It is the judgment of this court that said land was restricted against alienation at the time the sheriff of Kay County attempted to sell an undivided one-third interest therein and that said sheriff's deed is void. Exceptions are allowed the defendant. A form of judgment in accordance with this opinion may be submitted.