**BOYD, County Judge, et al. v. WEER et al.**

No. 16763—Opinion Filed July 27, 1926.

Rehearing Denied March 8, 1927.

**Indians—Estate of Full-Blood Heir in Allotment—Nonliability to Administration or for Debts—Liability of Allotment When Purchased by Indian.**

The estate acquired by a full-blood Indian in the allotted lands of the Indian next of kin upon his death is an estate of inheritance, and not subject to administration or payment of debts against the estate of the deceased allottee or deceased heir, and the interest acquired in said lands by a sale transaction, under the Act of Congress of May 27, 1908, is an estate by purchase and free from all restrictions in the hands of the Indian purchaser or his heirs, and, upon the death of the purchaser, the same is subject to administration and the payment of the legal claims against his estate.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Wagoner County; E. A. Summers, Assigned Judge.

Action by Edna Weer against Jamima McIntosh, individually and as administratrix of the estate of Commodore McIntosh, deceased, and other heirs and parties interested in the estate, for partition of real estate, and against the County Judge of Tulsa County to restrain the sale of said real estate

for the purpose of paying the approved claims of Hunsecker & Co., J. A. Barth Mercantile Company, and Dr. C. L. Robertson. The said claimants interpleaded in the case. Judgment was rendered for plaintiff and the heirs, and the county judge and interpleaders appeal. Reversed.

J. S. Severson and O. C. Essman, for plaintiffs in error.

Watts & Broaddus, for defendants in error.

Opinion by THREADGILL, C. The principal question involved in this appeal is the validity and character of the deed executed by a full-blood Creek Indian in 1917, conveying her inherited interest in allotted lands to another full-blood Creek Indian for the consideration of his inherited interest in other allotted lands and when said deed is approved by the county court having jurisdiction of the administration of the deceased allottee's estate.

The facts in the case are substantially as follows: John McIntosh and Susan McIntosh were husband and wife and full-blood Creek Indians, and each had an allotment of 160 acres of tribal lands, John's allotment being the S. W. ¼ and Susan's allotment being the S. E. ¼ of the same section, being section 20, T. 16 N., R. 19 E., in Wagoner county. The said John McIntosh died in 1903 leaving his widow, Susan; also, as his only surviving heirs, a son named Commodore McIntosh, and a daughter named Annetta McIntosh. This daughter died in December of the same year following her father's death, leaving no husband, but one child, Etta Cox, nee McIntosh, as her sole and only heir. Susan McIntosh died in 1905, leaving as her only heirs said Commodore McIntosh and said granddaughter, Etta Cox, who were both full-blood Creek Indians. They each inherited an undivided one-half interest in the two allotments. On March 30, 1917, the said Commodore McIntosh deeded to said Etta Cox, nee McIntosh, his undivided one-half interest in and to the S. W. ¼ of said section 20, and for the consideration of her undivided one-half interest in and to the S. E. ¼ of said section 20, which she deeded to him on the same date for said consideration, and, thereafter, on April 25, 1917, the county court of Wagoner county, by proper orders, approved these deeds and they were recorded according to law. Thereafter Commodore McIntosh died March 2, 1923, in Tulsa county, where he had his home, and left surviving him as his only heirs, his widow, Jamima McIntosh, who was a white woman, and five daughters,

namely, the plaintiff, Edna Weer, and Maggie Johnson, Lizzie McKinzie, Iona Hume, and Della Keel, defendants in this action, and the children of a deceased daughter, Arsyno Kerr, who died prior to his death, the said children being Ethel Baker, nee Kerr, Commodore Kerr, a minor, Dennis Kerr, a minor, and Vera Kerr, also a minor. The said children were enrolled as Creek Indians of one-half blood, and the said grandchildren as Creek Indians of one-fourth blood. Before Commodore McIntosh's' death he and his wife placed a mortgage on this southeast quarter section of land, and the validity of this mortgage is not questioned. After his death in May 19, 1923, his widow, Jamima, was appointed administratrix of his estate in the county court of Tulsa county. Notice to creditors was given and Hunsecker & Company presented for allowance for groceries a claim in the sum of $152.14, J. A. Barth Mercantile Company presented a claim for a burial outfit in the sum of $511, and Dr. C. L. Robertson presented a claim for medical services in the sum of $264, which claims were duly allowed by the administratrix and approved by the court, and ordered paid, and the administratrix having no funds with which to make payment, upon her application for that purpose, the court ordered this S. E. ¼ of said section 21, the land in controversy, to be sold for the purpose of paying said claims, and any other indebtedness, against the estate. The sales proceedings were commenced, but before a sale was consummated and on December 22, 1924, the administratrix filed a petition to be discharged on the ground that the land ordered sold was not subject to administration or liable for the debts of the estate. Thereupon, the claimants above mentioned filed a protest and upon a hearing the court denied the petition and sustained the protest and again ordered the land sold and the administratrix appealed from the order to the district court where the appeal was pending at the time this cause was tried and appeal taken to the Supreme Court. After the county court denied the petition of administratrix to be discharged, and sustained the protest of the claimants as above stated, and on December 27, 1924, Edna Weer, one of the defendants in error, as plaintiff, commenced this action against the administratrix and the heirs above named and the county judge of Tulsa county and the unknown heirs, executors, administrators, devisees, trustees and assigns of Commodore McIntosh, deceased, for the purpose of recovering and having partitioned to her a one-ninth interest in said tract of land, and for

a decree setting aside the orders of the county court to sell said land, and for an injunction to prevent the county judge from taking any steps to dispose of said land as assets of the estate of Commodore McIntosh, deceased. The court appointed a guardian ad litem to represent the minors, and all of the heirs, brought into the case as defendants, field answers concurring in the petition of the plaintiff and asking for the same relief. The three claimants against the estate of Commodore McIntosh, deceased, defended in the case as interveners and set up their claims, and contended that they were approved by proper orders of the county court and had been ordered paid, and they were legal and binding claims against the said estate, and the land involved in the action, and they further contended that the land was not restricted as alleged by the plaintiff and the heirs of the estate, but that the same was nonrestricted land and subject to the payment of their claims. They contended further that the district court was without jurisdiction to partition the land or to grant any relief asked for by plaintiff, and the heirs, contrary to the orders of the county court of Tulsa county, which were in full force and effect and unappealed from. They attached copies of their claims and copies of the orders and judgment of the county court approving them and ordering them paid by sale of said land. Replies were filed to the affirmative allegations of the interplea, and the issues as thus made up were tried to the court on March 19, 1925, and the court found in favor of the heirs and against the contention of the interveners, and rendered judgment accordingly, and the interveners and the county judge have appealed.

It appears from the record that the heirs do not contend that the transaction between Commodore McIntosh and Etta Cox, nee McIntosh, approved by the county court, was a void transaction, but they do contend that the undivided interest that each one transferred to the other by deed, under the approval of the county court, was still restricted the same as the interest that was not so transferred. It is not questioned that the one-half interest not transferred was restricted. They say "they agreed to divide or partition the lands" by making the deeds as they did. They quote the Act of Congress of May 27, 1908, section 9, and authorities to show that the transaction was not a partition, and we agree with them in this. They concede that the county court, under said Act of Congress, had power to approve deeds

made in pursuance of a voluntary agreement entered into by the full-blood heirs whereby they agreed that the one-fourth section should be allotted to one heir in severalty and the other one-fourth section to the other heir in severalty. We agree with them in this statement. They admit that said Act of Congress authorizes such an alienation, but they contend that this alienation, when made between or among the full-blood heirs, does not release the restrictions on the land although there is no requirement to this effect. They say that this contention finds support in what Congress did in the Act of June 14, 1918, in providing that any land allotted to a full-blood Indian or conveyed to him upon his election to take the same at the appraisement, in partition proceeding under the state law, "shall remain subject to all restrictions upon alienation and taxation obtaining prior to such 'partition." They think the intent expressed here throws light on the intent of Congress in the Act of May 27, 1908, as to how the rule of restriction should be understood where alienation of the inherited land is made between or among the full-blood heirs giving land for land, and the same being approved by the county court. This construction is too strained for the judicial mind to adopt and follow. It was the intention of Congress, under the said Act of 1908, that the county court should be the federal agency in protecting the full-blood Indian by passing on and approving the sale of his inherited land in dealing with his stronger and more intelligent white neighbor, and when the county court has performed this duty and the deed is approved, the restrictions on the land fall off, and we are unable to see any difference in this transaction and one of the same character between full-blood Indians and the results following; nor do we find anything in said Act of Congress making a difference, and defendants in error have furnished us no authority nor good reason for reading into this Act of Congress, a difference in the form and character of the transaction or the results thereof.

But defendants in error say if their contention in this respect is not upheld, the Act of Congress of June 14, 1918, is sufficient to reimpose restrictions on this unrestricted interest of the Indians involved in this controversy. This act provides as follows:

"The lands of full-blood members of any of the Five Civilized Tribes are hereby made subject to the laws of the state of Oklahoma, providing for the partition of real estate. Any land allotted in such proceeding to a full-blood Indian, or conveyed to him upon his election to take the same at the appraisement, shall remain subject to all restrictions and taxation obtaining prior to such partition. In case of sale under any decree, or partition, the conveyance thereunder shall operate to relieve the land described of all restrictions of every character."

The meaning here is plain and unambiguous. The act provides for partition of the lands of full-blood Indians under the laws of the state and specially provides for restrictions on any lands allotted or conveyed to a full-blood Indian upon his election to take the same at the appraisement in such proceeding. But in case of sale under any decree or partition, the conveyance operates to relieve the land described of all restrictions of every character. This last provision applies to the Indian as well as to any other person. There is nothing here to change or disturb the transactions and vested rights under the Act of May 27, 1908. There was no provision for partitioning restricted lands of the Indian before the Act of June 14, 1918, and the transaction between Commodore McIntosh and Etta Cox, nee McIntosh, was not in the nature of a partition, but of a sale, under section 9 of the Act of May 27, 1908, and it would be an absurd construction to say it was within the provision of the Act of June 14, 1918. Under the view we take of the case, an undivided one-half interest of this land was acquired by Commodore McIntosh, deceased, as an estate of inheritance, and, upon his death, passed to his heirs free from liability of debts against his estate, and the other one-half interest was acquired by purchase and passed to the heirs subject to administration and any legal claims against his estate. There is very little more to be said. The trial court took the view of the defendants in error and held that the entire tract of land was restricted and not subject to administration nor debts against the estate of Commodore McIntosh, deceased, and rendered judgment accordingly, and we hold this was error and should work a reversal of the judgment.

The judgment, therefore, is reversed and the cause remanded to the district court of Wagoner county, with directions to set aside the judgment appealed from and render judgment for plaintiff in error in accordance with the views above expressed.

By the Court: It is so ordered.

Note.—See 31 C. J. p. 522 §95; p. 524 §96.