## SHARPE et al. v. GADDY.

No. 26738.　May 3, 1938.

Orr & Woodford, for plaintiffs in error.

Pryor & Sandlin, for defendant in error.

GIBSON, J. The plaintiffs in error were defendant and intervener in the trial court, and defendant in error was plaintiff in the trial court, and they will be referred to herein as they appeared in the trial court.

All parties admit that the only question presented is: Was the attachment issued April 25, 1931, in a suit filed the same date, lawfully levied April 26, 1931, on an inherited homestead restricted until that date under the provisions of section 1 of the Act of Congress of May 27, 1908, 35 Stat. 312.

The case was tried before the court and it was stipulated at the trial that the land in controversy constituted the homestead allotment of Hannah Hardage, enrolled as a half-blood Creek Indian, and that she died during the year 1909, and left as her sole and only heir at law her son, Harry H. Sharpe, who was born subsequent to March 4, 1906. There was no material conflict in the evidence; the defendant Sharpe failed to appear at the trial; the allegations of plaintiff's petition were supported by the testimony, and there was no dispute as to the amount due plaintiff or to the truthfulness of the allegations made in the affidavit for attachment.

The intervener, Williams, testified that he contracted to purchase the land in question from the defendant Sharpe late in the afternoon of April 27, 1931, but that the execution of the deed was not completed or acknowledged until April 28, 1931; therefore, it must be conceded that the order of attachment had been levied upon the land, the land had been appraised, and the writ returned to the court prior to the time the deed was executed to the intervener, Williams. There is some controversy as to whether or not the intervener, Williams, at the time he took his deed, knew that the suit had been filed and the land attached; however, under our view of the law, such fact would not be material.

It is the contention of plaintiff in error that under the provisions of sections 1 and 9 of the Act of Congress of May 27, 1908,

said land was not subject to be levied upon under the attachment. The applicable parts of sections 1 and 9 of said act read, respectively, as follows:

"All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood * * * shall not be subject to alienation, contract to sell, power of attorney, or any other encumbrance prior to April twenty-sixth, nineteen hundred and thirty-one. * * *"

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: * * * Provided, further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one. * * *"

Section 4 of the Act of May 27, 1908, provides:

"That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes: Provided, that allotted lands shall not be subjected or held liable, to any form of personal claim, or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law."

It will be noticed that upon removal of restrictions the land becomes subject to civil burdens as though it were the property of other persons, with the proviso that no form of indebtedness against any allottee arising or existing prior to the removal of restrictions shall not be enforceable against the land.

It will be noted that it is a claim or demand against the allottee that is unenforceable. Ordinarily, as used in these acts of Congress, the word "allottee" does not include the heirs. Kenoly v. Hawley, 84 Okla. 120, 202 P. 494. Here, of course, there is no indebtedness against the allottee involved. But, it is urged, the situation is analogous to that which existed in Boyd v. Weer, 124 Okla. 91, 253 P. 988, and Freeman v. Masters, 161 Okla. 8, 16 P.2d 563. These cases involved debts against full-blood heirs of allottees. The heirs had died and it was sought to enforce the obligations against their inherited lands. In the first case the

court, without discussing or giving the reasons therefor, held that creditors of a full-blood heir could not enforce their obligations against his inherited lands. The principal question in that case was whether the interest in restricted lands obtained by a full-blood Indian through a partition deed was still restricted. The court held such interest not restricted. The court stated:

"Under the view we take of the case, an undivided one-half interest of this land was acquired by Commodore McIntosh, deceased, as an estate of inheritance, and upon his death, passed to his heirs free from liability of debts against his estate, and the other one-half interest was acquired by purchase and passed to the heirs subject to administration and any legal claims against his estate."

It seems to be assumed that the one-half inherited interest not transferred was so restricted as to prevent enforcement of claims against it after the heirs' death; the court had previously said: "It is not questioned that the one-half interest not transferred was restricted."

The case of Freeman v. Masters, supra, without discussion, follows the case of Boyd v. Weer, but with strong dissenting opinions. Of course, at no time in the lifetimes of the full-blood heirs could their inherited lands have been sold on account of any judgment that might have been obtained against the heir for any purpose. For that reason, apparently, the court did not deem the inherited interests as assets subject to the payment of debts. It is not held there that the term "allottees", as used in section 4, includes heirs, and we see no reason for extending the meaning of that term in this case.

The allottee is not here involved. There is no question of restriction on account of blood. The restriction here expired by lapse of time and not by death. The language of the act is that the homestead shall remain inalienable for the use and support of such issue during their life or lives, until April 26, 1931. The right given is somewhat analogous to the homestead rights allowed under state law. The ordinary homestead cannot be sold for debts except those specified in the law, as long as it is used and occupied as a homestead. It cannot be sold by one of the spouses without the approval of the other. But when its homestead character ceases, it becomes subject to the payment of debts or to the lien of a judgment as other property. In such cases the rule is that a judgment is a lien upon real estate formerly occupied as a homestead from and after such real estate is abandoned as such

homestead. Morris v. Brown (Kan. App.) 48 P. 750; Hall v. Holland (Minn.) 165 N. W. 235; Moore v. Smead (Wis.) 62 N. W. 426.

The defendant, Sharpe, did not testify at the trial, so we must take as unrefuted Gaddy's claim that he acted in good faith and not in any attempt to violate restrictions in his transactions with Sharpe out of which this proceeding arose. On the face of the record it appears conclusively that the original transactions were not in any way intended to violate restrictions and that no subsequent suit or ratification of these transactions was contemplated. Cases where schemes and devices were employed to escape federal restrictions, cases involving minors' lands, and cases involving other federal statutes and restriction provisos do not appear in point.

The defendant, the debtor Sharpe, as shown by the record, is of one-fourth Indian blood, was born after March 4, 1906, and is, of course, not enrolled as an Indian citizen. No act of Congress placed any restrictions upon him personally. The Act of Congress of May 27, 1908, did place certain restrictions upon the homestead allotment of his mother by preventing its alienation, except with the consent of the Secretary of the Interior, prior to April 26, 1931; but on and after April 26, 1931, the land belonged to him without any restriction against alienation. We have been cited with no act of Congress, treaty, or decision providing or holding that this land could not be taken for debt on or after April 26, 1931, even though the debt was incurred prior to that date.

The defendants contend that the attachment was void for the reason that at the time of its issuance on April 25, 1931, the land was restricted and cite the case of Smith v. Stricker Radio & Music Shoppe, 123 Okla. 95, 251 P. 1015, which holds: "As the validity of an attachment must be determined by the facts existing at the date when it issues, proof of matters transpiring since the attachment was issued cannot be considered." A reading of the case shows that it is not at all in point upon the proposition here, but has reference solely to the ground for attachment. It holds, in substance, that the attachment must be sustained by the grounds therefor existing at the time it is issued and cannot be sustained by transactions occurring after the writ is issued. No authority is submitted to support the contention that the levy of the writ made on April 27, 1931, is void for the reason the land was not subject to at-

tachment on April 25, when the writ was issued by the clerk of the court.

The writ did not direct that it be levied on this or any other particular property; it was general and could have been levied on any property the defendant Sharpe acquired at any time after the writ was issued and before a levy was actually made. The property was bound only from the moment the writ was levied, and the validity of the attachment lien is not affected by the condition of the title when the writ was issued. Since there is no contention made that grounds for the attachment did not exist or that the writ was improperly issued, we hold that the seizing of the land in question under the writ, on April 27, 1931, was valid. The writ was levied, the lands appraised, and the writ returned to the court prior to the execution and delivery of the deed to the intervener, Williams; therefore his deed is junior and subject to the lien of the attachment, and is void as to the plaintiff. The trial court did not err in confirming the sheriff's sale of said lands.

The judgment of the trial court is accordingly affirmed.

BAYLESS, V. C. J., and RILEY, PHELPS, CORN, and HURST, JJ., concur. OSBORN, C. J., and WELCH, J., dissent. DAVISON, J., absent.