In re LONG'S ESTATE.

LONG v. DE HANAS et al.

No. 34777.    Aug. 5, 1952.

Rehearing Denied Oct. 21, 1952.

*249 P. 2d 103.*

Bruce B. Potter and Raymond A. Trapp, Blackwell, and Homer Chandler, Salina, Kan., for petitioner.

Frank Nesbitt, Nelle Nesbitt, and Robert E. Nesbitt, Miami, for respondents.

BINGAMAN, J.  On February 7, 1949, Lottie P. Long, hereinafter called plaintiff, filed a petition in the county court of Ottawa county seeking to probate a will of his deceased wife, Ruth B. DeHanas Long.  The two children of Ruth B. Long, by a former husband, appeared in the county court and filed a motion to dismiss the proceeding upon the ground that all property owned by the deceased was restricted and held in trust by the Department of the Interior and that the court had no jurisdiction of the estate.  The motion further stated that the will presented for probate by plaintiff had been theretofore passed upon and disapproved by the Secretary of the Interior in proceedings before the Secretary in which the plaintiff was represented. Plaintiff appealed to the district court and after a hearing at which much testimony was introduced, the district court sustained the judgment of the

county court and affirmed the dismissal. Plaintiff appeals.

There is little dispute over the essential facts. From the record it appears that Ruth B. Long was the daughter of a half-blood Ottawa Indian mother and a white father; that she married one John Buffalo, a member of the Quapaw Tribe of Indians, who predeceased her, leaving to her, as his sole heir, certain interests in restricted lands which he had inherited from his parents as members of the Quapaw Tribe of Indians; that thereafter she married one DeHanas, who was the father of her two children, defendants herein, and that the plaintiff Lottie P. Long was her fourth husband; that she obtained a divorce from Long at one time, but thereafter continued to live with him in what might be called "Common law marriage."

At the time of her death Ruth B. Long left three wills, one dated April 24, 1936, one dated October, 1941, and one dated March 20, 1945. This last will is the will which plaintiff presented for probate. It further appears that after the death of Ruth B. Long, the Secretary of the Interior, at a proceeding in which plaintiff was represented, approved the first will made by deceased and specifically disapproved the two later wills on the ground that at the time of the execution of each the deceased was incompetent to make a will. In this first will, which was approved by the Secretary of the Interior, the deceased left plaintiff a legacy of $100, which was paid to and accepted by him. The lands inherited by deceased from John Buffalo appear to have been valuable for minerals, and at the time of her death some $111,000 in cash, being her proportionate share of the accumulated sum of royalty from mining operations on said lands, was held by the Department of the Interior as restricted funds. It also appears that the deceased inherited from her mother, a member of the Ottawa Tribe, certain property including real estate, and that after the death of her mother a patent in fee to the heirs of her mother was issued by the Interior Department, thus removing all restrictions against it, and that she subsequently sold said lands.

The contentions of the parties revolved around a proper construction of section 26, of an Act of Congress passed March 3, 1921, 41 Stat. 1248, which Act extended restrictions on certain lands allotted to citizens of the Quapaw Tribe of Indians. This Act provides that the Act of March 2, 1895, 28 Stat. 907, in so far as the same related to restrictions against alienation of allotments of lands to the Quapaw Indians, be amended so as to provide that the restrictions which now exist against the alienation of lands allotted to and allotted lands inherited by certain Quapaw Indians named in the Act, "and including any Quapaw allotted or inherited lands in which any of the said named Indians have any undivided interests be and the same are hereby extended for the further and additional period of 25 years from the date of this Act." The act then provided that the Secretary of the Interior might remove restrictions after he found an Indian owner to be competent to conduct his own business affairs and provided further for the leasing of the lands embraced in the Act, by the Secretary of the Interior, under such rules and regulations as prescribed by him. It appears that these restrictions were further extended in 1939, but it is conceded that whether these restrictions covered the interests of the deceased and whether the Secretary of the Interior had power to approve her will as to such lands depends upon the interpretation of the language above quoted. All of the lands in which deceased had an interest were lands in which some of the Indians named in the 1921 Act had inherited interests.

Plaintiff first contends that the child of a marriage between a white man and a woman of half Indian blood is not by birth an Indian; that Indian lands inherited by such child are freed of restrictions, and that upon the death

of such child the county court has jurisdiction to administer its estate. In support of this assertion plaintiff cites Keith v. United States, 8 Okla. 446, 58 P. 507; Halbert v. United States, 283 U. S. 753, 75 L. Ed. 1389, and United States v. Hadley, 99 Fed. 437. But in these cases entirely different questions were presented than those involved in the instant case. In the Keith case the question was whether the child of an Indian mother and a white father, under the Act covering allotments to citizens of the Arapahoe Tribe, was entitled to an allotment and the court held he was not. Halbert v. United States, involved a similar question and the court held that the children of a marriage between an Indian woman and a white man usually took the status of the father, but that if the wife retained tribal membership and the children were born in the tribal environment they took the status of the mother. United States v. Hadley was a criminal case in which a mixed blood Indian, whose father was a white man, contended that he was to be tried for the crime by the court having jurisdiction of the offenses of white men and not the court having jurisdiction of offences by Indians and this view was sustained by the Federal Court in that case.

We consider these decisions inapplicable to the case here presented. In Williams v. Steinmetz, 16 Okla. 104, 82 P. 986, we quoted with approval a statement in United States v. Flournoy Livestock & Real Estate Co., 69 Fed. 886, in which the court stated that the argument that Congress could not make the Indians citizens of the United States without giving them unrestricted power to sell their property, was untenable, and that restrictions upon the sale or use of property were not affected by the fact that the owners were citizens of the United States.

And in Bowling v. United States, 233 U. S. 528, 58 L. Ed. 1080, the Supreme Court said that the guardianship of the Federal Government over an Indian did not cease when an allotment was made and the allottee became a citizen of the United States. To the same effect is United States v. Noble, 237 U. S. 74, 59 L. Ed. 844.

In Sharpe v. Gaddy, 182 Okla. 616, 79 P. 2d 224, we held that although the owner of restricted lands inherited by him was of one-fourth Indian blood and not enrolled as an Indian citizen, the restrictions upon the land in which he had inherited an interest continued in effect so that the land inherited by him could not be taken under attachment proceedings prior to the expiration of the restrictions.

Plaintiff also cites and relies upon Levindale Lead & Zinc Mining Co. v. Coleman, 241 U. S. 432, 60 L. Ed. 1081, in which the Supreme Court held that the restrictions contained in the Osage Allotment Act did not extend to white men not of Indian blood who were not as Indians under national protection, although they might inherit lands from Indians, and that as to them it would require clear language to show an intent to impose restrictions.

The restrictions involved in the Act herein considered ran with the land and were not personal to the allottee, but operated on the heirs as well. United States v. Reilly, 290 U. S. 33, 78 L. Ed. 154; Bowling v. United States, supra.

We therefore conclude that, regardless of her status as a citizen the deceased being an Indian or of Indian blood, her inherited land was bound by the restrictions contained in the Act.

Plaintiff next contends that a proper construction of the language of sec. 26, above referred to, shows that it was not the intent of Congress to place restrictions upon any Indian heirs other than the incompetent Quapaw Indians therein named and applied only to the alienation of lands or interests therein owned by the named persons. We are unable to agree with this contention. The Act specifically provides that all

lands whether allotted or inherited, in which any of the named Indians have undivided interests, are to be subject to the restrictions, and under this plain language the interest of the deceased in lands in which some of the named Indians were interested was made inalienable in her hands, and as to such lands she was a ward of the Government and under the guardianship of the United States, by virtue of her Indian blood. United States v. Noble, supra. It has been many times held that Congress has exclusive and plenary power to legislate with reference to the various Indian Tribes. Marchie Tiger v. Western Inv. Co., 221 U. S. 286, 55 L. Ed. 738; Walker v. Brown, 43 Okla. 144, 141 P. 681. We think that in the exercise of such power Congress could enact a law continuing restrictions upon lands owned by incompetent Indians, not only against those Indians themselves but as against their heirs who were of Indian blood, regardless of the fact that they were not of the blood of the tribe of the former owner. This was the construction placed upon the Act by the Department of the Interior and it has long exercised its guardianship over the deceased and others similarly situated at all times. While the primary purpose of the Act was to protect the interests of the incompetent Quapaw Indians named therein, Congress doubtless felt that the alienation of interests in said lands by other Indian heirs, not expressly named therein, might be detrimental to the best interests of those named, and that in order to adequately protect them restrictions should be placed upon the lands in the hands of any person, unless subject to the exception that they would not apply to whites having no Indian blood as held in the Levindale case, supra. But, whatever the purpose of Congress, the language is plain and the Act does not limit the restrictions therein contained only to the persons named in the Act. The construction placed upon the statute by the Department of the Interior, long continued and long acquiesced in, while not conclusive, is entitled to much

weight and we think should be sustained unless conclusively shown to be erroneous. Furthermore, the Secretary of the Interior, by assuming the administration of such trust property, has asserted the right to do so, and his claim of right may not be challenged in an action to which neither he nor the United States is a party. Hanson v. Hoffman (10th Cir.) 113 Fed. 2d 780; Morrison v. Work, 266 U.S. 481, 69 L. Ed. 394.

Plaintiff further contends that 25 U.S. C.A. 373, granting authority to the Secretary of the Interior to approve wills, must be construed with the preceding section 372, and extends only to those who inherited from the original allottee. But section 373 expressly provides that any person of the age of 21 years, having any right, title or interest in any allotment held under trust or under patents containing restrictions on alienation, and monies or other property held by the United States in trust, may dispose of such property by will, but that such will shall not be valid unless approved by the Secretary of the Interior. Obviously, this language is broad enough to include the deceased, Ruth B. Long, since both the property and money owned by her at the time of her death were held in trust by the United States.

The last contention made by plaintiff is that since the order made by the Secretary of the Interior approving the will of deceased, made a finding that she left both restricted and unrestricted property and was specifically limited to her restricted estate, the trial court committed error in sustaining the motion to dismiss. It is true that the order of the Secretary contained such statement, but in the evidence produced before the trial court it was conclusively established that the deceased left no property except her interest in the restricted lands, and the restricted fund held by the Government in trust for her.

Plaintiff himself testified that he thought she had some other property,

but could not identify it or describe it in any way, except that it was rough land, he thought, and the testimony of the other witnesses was to the effect that prior to her death deceased had conveyed all her unrestricted property. The trial court so found and its finding is amply supported by the evidence.

Affirmed.

WELCH, CORN, GIBSON, DAVISON, and O'NEAL, JJ., concur. HALLEY, V.C.J., and JOHNSON, J., dissent.